**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 24 2003**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

---

KEVIN RUTHERFORD (and in
behalf of fellow prisoners within
DOC, as class action),

Plaintiff-Appellant,

v.

MEDICAL DEPARTMENT OF
DEPARTMENT OF CORRECTIONS;
ROBERT FLORES; DR. MCGARRY;
DR. CABILING; WARDEN SOARES;
WARDEN NEET; C/O EGLEY; P.A.
LAWERANCE; AVCF MED. STAFF;
DR. WERMERS; TRANSPORT OF
CDOC; DOLORES MONTOYA;
MED. STAFF OF FCF; OFFENDER
SERVICES, with MED. STAFF OF
FMCC,

Defendants-Appellees.

No. 02-1279
(D.C. No. 00-RB-2444 (PAC))
(D. Colo.)

---

ORDER AND JUDGMENT [*]

---

Before **BRISCOE** , **PORFILIO** , and **ANDERSON** , Circuit Judges.

---

[*]     This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Kevin Rutherford, a state prisoner appearing *pro se*, appeals from the district court's dismissal of his Eighth Amendment claims brought pursuant to 42 U.S.C. § 1983. After defendants moved for summary judgment, the claims were dismissed on several grounds, including failure to make installment payments toward filing fees. Our jurisdiction arises under 28 U.S.C. § 1291. We conclude that Mr. Rutherford sufficiently complied with the district court's order to show cause and demonstrated that he has no assets with which to pay the fee. We also conclude that the district court improperly granted summary judgment to certain defendants and erroneously dismissed certain defendants under Rule 12(b)(6). We therefore reverse in part and affirm in part.

## I. Factual and procedural background

After two years of complaining about severe back pain, Mr. Rutherford underwent surgery in January 2001 for several herniated disks that had caused nerve damage. He was returned to prison to recuperate. His claims of deliberate indifference to serious medical needs are primarily based on allegations that defendants delayed and failed to afford him proper medical care before

-2-

January 2001, refused to provide him with prescribed and appropriate pre- and post-surgical pain medications and mattresses, and refused or failed to properly administer prescribed medication for his Hepatitis C. He also alleges that certain defendants discontinued prescribed pain medications and reclassified and transferred him to facilities distant from his surgeon in retaliation for his complaints about inadequate or deliberately-indifferent medical care.

Mr. Rutherford filed his original complaint on December 5, 2000. On December 13, 2000, the district court granted Mr. Rutherford's request to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915, ordering him to make monthly payments of twenty percent of the preceding month's income credited to his trust fund account or to show cause each month why he has no assets and no means by which to make the monthly payment. R. doc. 6 at 2. Mr. Rutherford subsequently submitted prison account statements demonstrating that he earned approximately $6.16 per month and that his prison account had a negative balance. Accordingly, on January 25, 2001, the district court entered an order allowing Mr. Rutherford to proceed without paying the initial partial filing fee and reminded him that he remained obligated to pay the full filing fee through monthly installments as funds became available.

In response to subsequent orders to pay monthly installments or to show cause, Mr. Rutherford submitted account statements demonstrating a negative

balance of -$34.46 for March 2001, and income of $6.16 and an account balance of -$70.28 for May 2001. Debits to his account primarily consisted of medical, postage, mandatory restitution, and xerox charges. R. doc. 26, ex. 1; *id.* doc. 38, ex. 17. His balance on July 7, 2001 was -$115.16. *Id.* doc. 48 at 2.

In August 2001, defendants Dr. Cabiling, Dr. McGarry, and Robert Flores moved for summary judgment, and the remaining defendants moved for dismissal based on sovereign and qualified immunity and failure to state a claim. In support, Dr. Cabiling, Dr. McGarry, and Robert Flores submitted affidavits. Because he had not been provided with a full copy of his medical records, Mr. Rutherford requested discovery and an extension of time in which to respond, which the court granted.

The court again entered an order on September 24, 2001, directing Mr. Rutherford to make a monthly filing fee payment or to show cause. In response, Mr. Rutherford submitted another account statement demonstrating that his balance on October 11, 2001 was -$115.91. *Id.* doc. 71 at 4. The court entered a similar order on February 12, 2002. Mr. Rutherford answered on February 21, stating that he had pneumonia and was unable to immediately respond to the court's orders. On March 4, he filed his response, further explaining that he had been transferred to another facility since the February 12 order, he had been segregated without access to legal materials, he had been sick,

and that he had requested an account statement. He stated that he would try to find some way to send a payment and asked if the court could order the prison to debit his prison account for the outstanding balance so he could pay it off in prison. *Id.* doc. 108 at 3. On March 8, he filed another document stating he had no funds and explaining that the state automatically deducted seventy percent of his earnings for debt and restitution, leaving him virtually no available funds. *Id.* doc. 110 at 3. On March 22, he submitted another responsive pleading and an account statement showing that he had a current balance of -$46.80 and no available funds. *Id.* doc. 121.

In her April 16, 2002, decision, the magistrate judge recommended that all claims against all defendants be dismissed except for two: Mr. Rutherford's claim that individual John Doe medical staff at Fremont Correctional Facility ("FCF") unlawfully denied his hepatitis treatments and his medically-prescribed extra mattress. R. doc. 132 at 19-20. The court denied Mr. Rutherford's motion seeking a forty-day extension to respond to the magistrate judge's recommendations.

In a subsequent decision filed April 23, 2002, the magistrate judge recommended dismissing the two remaining claims for Mr. Rutherford's failure to pay the monthly installments toward his filing fee. The magistrate judge stated that, although his account statement showed a deficit and he claimed (1) he was

indigent, (2) he earned only .28 per day, and (3) his $3.40 canteen expenditure was for stamps, no records supported his expenditure claim and he therefore had "failed to show that he is indigent and unable to make his monthly payment toward the filing fee." *Id.* doc. 134 at 3.

Mr. Rutherford objected to the recommendation that his case be dismissed for failure to pay filing fees and submitted a receipt proving that his $3.40 canteen expenditure had indeed been for stamps. He also objected to the dismissal of certain defendants and claims. The district court adopted the April 16th and April 23rd recommendations, granted summary judgment and dismissal in favor of certain defendants, and dismissed the Eighth Amendment claims against the FCF medical staff for failure to pay filing fees. *Id.* doc. 145 at 4-5. In his motion for reconsideration, Mr. Rutherford pointed out that, under § 1915(b)(2), it was the facility's duty to forward payments for filing fees only whenever his account balance exceeded $10.00. He submitted certified account statements showing that he was still $51.95 in debt and had no available funds. R. doc. 147 at 5. The court denied reconsideration. This appeal followed.

## II. Dismissal for failure to pay filing fees

The Federal Rules of Civil Procedure allow a district court to dismiss an action for failure to comply with a court order. *See* Fed. R. Civ. P. 41(b). Accordingly, we review for abuse of discretion the district court's dismissal of Mr. Rutherford's suit. *See Mobley v. McCormick*, 40 F.3d 337, 340 & n.1 (10th Cir. 1994).

As outlined above, the record demonstrates that Mr. Rutherford complied with the court's February 12, 2002, order to show cause why he could not pay installment fees by submitting his inmate account and an explanation of mandatory deductions and voluntary expenditures. The account reflects no positive account balance. Under these circumstances, no monthly payment is due and the case could not be dismissed for failure to pay the fees. *See* § 1915(b)(2) (providing that "[t]he agency having custody of the prisoner shall forward payments from the prisoner's account to the clerk of the court each time the amount in the account exceeds $10"; § 1915(b)(4) ("In no event shall a prisoner be prohibited from bringing a civil action . . . for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee"); *Shabazz v. Parsons*, 127 F.3d 1246, 1248 (10th Cir. 1997) (stating that payment of initial partial fee is made only when funds exist and that subsequent monthly payments are "extracted only in months when the prisoner's trust fund account exceeds

-7-

ten dollars," and noting that, under § 1915(b)(4), a prisoner cannot be precluded from going forward with his cause of action when he has no assets or means to make payments) (quotation omitted). We therefore hold that the district court abused its discretion by dismissing the two Eighth Amendment claims against medical staff for defendant's failure to pay the filing fee.

### III. Summary judgment in favor of Dr. Cabiling

A. Delay in treatment for herniated discs. Mr. Rutherford had back surgery in 1994 for disc herniation. The record shows that he complained of severe back pain in 1999. *See* R. doc. 41, ex. 19–25. Dr. Cabiling was the physician in charge of Mr. Rutherford's medical care while he was incarcerated at both the Four Mile Correctional Center (FMCC) and FCF, which are both located in Canon City. The district court found as undisputed the facts that Dr. Cabiling: (1) began treating Mr. Rutherford for his back pain in May 1999; (2) ordered X-rays and a muscle relaxant and imposed lifting and work restrictions; (3) ordered EMG/NCS (electromyography) testing, which was performed July 16, 1999, and which was positive for lumbar disc/nerve problems; and (4) authorized a neurosurgeon consultation in July 1999. R. doc. 132 at 4-5. It is also undisputed that (5) Mr. Rutherford did not see Dr. Lilly, the neurosurgeon, until October 1, 1999; (6) Dr. Lilly ordered an MRI (which was not done until February 9, 2000-- four months later) and an egg-crate mattress and pain medications; (7) the MRI

showed nerve damage and pressure on both sides of Mr. Rutherford's sciatic nerves, requiring surgery at discs L3, L4, and L5; (8) no follow-up appointment with Dr. Lilly was scheduled until September 8, 2000 (seven months later), and (9) surgery was not performed until January 17, 2001, almost a year and one-half after Dr. Cabiling knew that objective tests supported Mr. Rutherford's complaints of severe pain and almost a year after serious nerve impairment was positively diagnosed and surgery was recommended. *See id.* at 5.

Mr. Rutherford claims that Dr. Cabiling and his medical staff at FMCC allowed his authorization for a specialist consultation to expire once before he was first seen by Dr. Lilly and that he was forced to suffer needlessly because of Dr. Cabiling's deliberate indifference in failing to timely obtain surgical treatment.

The district court determined that Mr. Rutherford's back condition constituted a serious medical need, and that finding has not been appealed from. *Id.* at 11. The court also acknowledged that Mr. Rutherford blamed Dr. Cabiling for unwarranted delay in obtaining treatment and withholding medications, which caused him to suffer further damage and "years of pain." *Id.* But, in the district court's opinion, Dr. Cabiling "treated and monitored plaintiff's back condition in a timely manner. To the extent there was any delay in plaintiff's back surgery, the evidence does not show that the delay is attributable to Dr. [Cabiling]." *Id*.

This factual finding and legal conclusion disregard established Tenth Circuit law concerning both summary judgment standards and the important gatekeeping role that prison physicians assume in affording medical care to inmates. *See Sealock v. Colorado*, 218 F.3d 1205 (10th Cir. 2000).

> Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. We review a grant of summary judgment *de novo*, applying the same standard as the district court. We examine the record to determine whether any genuine issue of material fact was in dispute; if not, we determine whether the substantive law was applied correctly, and in so doing we examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing the motion.

*Id.* at 1209. "It is not the task of a court considering summary judgment to weigh the evidence." *Id.* at 1210 n.4. The proper analysis of deliberate indifference as a gatekeeper is set forth as follows:

> A prison official's deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment. Deliberate indifference involves both an objective and a subjective component. The objective component is met if the deprivation is sufficiently serious. A medical need is sufficiently serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. The subjective component is met if a prison official knows of and disregards an excessive risk to inmate health or safety.
>
> . . . .

-10-

Delay in medical care only constitutes an Eighth Amendment violation where the plaintiff can show that the delay resulted in substantial harm . . . [as when] there is factual evidence from which a jury could conclude that the delay occasioned by his inaction unnecessarily prolonged appellant's pain and suffering.

. . . .

Our cases recognize two types of conduct constituting deliberate indifference. First, a medical professional may fail to treat a serious medical condition properly. Where this sort of conduct is alleged, the medical professional has available the defense that he was merely negligent in diagnosing or treating the medical condition, rather than deliberately indifferent. The second type of deliberate indifference occurs when prison officials prevent an inmate from receiving treatment or deny him access to medical personnel capable of evaluating the need for treatment. Ordinarily, a medical professional will not be liable for this second kind of deliberate indifference, because he is the person who provides the treatment. If, however, the medical professional knows that his role in a particular medical emergency is solely to serve as a gatekeeper for other medical personnel capable of treating the condition, and if he delays or refuses to fulfill that gatekeeper role due to deliberate indifference, it stands to reason that he also may be liable for deliberate indifference from denying access to medical care.

*Id.* at 1209-11 & n.5 (quotations and citations omitted). Whether, as

Mr. Rutherford claims, Dr. Cabiling and his staff at FMCC were deliberately

indifferent to the continuing nerve damage and severe pain caused by herniated

discs by reason of their alleged inaction (allowing authorization for consultations

to expire and permitting delays in arranging for consultations, MRIs, follow-up

appointments, and scheduling and transporting Mr. Rutherford for surgery) is in

dispute. A single affidavit making a conclusory statement that "Mr. Rutherford

-11-

was always provided with appropriate medical treatment," R. doc. 55, attach. 1 at 2, unsupported by medical records, does not satisfy the summary judgment requirement that Dr. Cabiling present evidence demonstrating no genuine issues of material fact exist concerning Mr. Rutherford's claims. A year and one-half delay in obtaining surgical relief after diagnosis of nerve damage could be determined to be unreasonable and indicative of deliberate indifference.

B. Retaliation. Mr. Rutherford submitted evidence indicating that Dr. Cabiling discontinued his prescribed Vicodin on September 15, 1999, the same day Mr. Rutherford complained about not properly receiving prescribed interferon treatments and after Dr. Cabiling had discovered that FMCC medical staff had indeed missed scheduled treatments on at least two occasions. R. doc. 106, ex. L1, L2. It is undisputed that Dr. Cabiling knew on September 15, 1999, of the objective EMG findings of nerve involvement and that Mr. Rutherford continued to complain of severe pain. In his response to the motion for summary judgment, Mr. Rutherford asserted that Dr. Cabiling's proffered explanations for discontinuing the Vicodin were pretextual and unsupported by the medical record. The district court held that Mr. Rutherford did not "aver facts sufficient to show that Dr. Cabiling discontinued the Vicodin in retaliation for plaintiff's complaints that other medical staff members had failed to give him scheduled interferon treatments." R. doc. 132 at 14. We disagree. Although we express no

opinion on the merits of his claim, at this stage of the litigation Mr. Rutherford has sufficiently stated a claim for retaliation.

## IV.  Dismissal of other defendants and other claims

"Dismissal of a pro se complaint for failure to state a claim is proper only where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend.  We must liberally construe the allegations of a pro se complaint[,] . . . . [and] in deciding a motion to dismiss pursuant to Rule 12(b)(6), a court may look both to the complaint itself and to any documents attached as exhibits to the complaint."  *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001) (quotations and citations omitted).  We review the district court's decision to dismiss defendants for failure to state a claim *de novo.  Id.*  Further, we must consider all factual allegations contained in Mr. Rutherford's complaint as true, construing those allegations in the light most favorable to him.  *Id.* at 1277.

In his original complaint, Mr. Rutherford alleged that John Doe members of the FCF medical staff allowed his authorization number to see a specialist expire; that the FCF members then ignored or denied his specialist's orders, including his order to provide a second mattress, and denied him effective pain medication, "leaving [him] in constant pain throughout the day." R. Doc. 3 at 7.  He also alleged that between 1999 and 2000, members of the medical staff responded to

his claims of extreme back pain by sending him to physical therapy without examination or tests, leading to more nerve damage and pain. *Id.* at 10. Mr. Rutherford was incarcerated at FMCC during 1999.

In Claim IV, he alleged that CDOC's "medical departments" violated the Eighth Amendment by not properly responding to his need for "liver treatment" for Hepatitis C. In his "supporting facts," he claimed that a one-year interferon treatment program for injections administered three times per week was prescribed. He began this program in 1998 and received injections for 4 months at FCF until he was transferred to FMCC, where FMCC medical staff allegedly discontinued the treatment and required him to "re-establish" his need for the treatment by another doctor. He states that, after a doctor saw him, a new one-year treatment plan was scheduled and begun in May 1999. He states that, despite his written requests, nurses at FMCC refused to allow him to review his blood-test results showing his progress. R. Doc. 3 at 12. He claims that, after a year of treatment, Dr. Bloor (a hematologist) prescribed another 6 months of interferon combined with Ribavirin because his liver was not responding. The FMCC staff began his treatment again. In June 2000, he alleges he was transferred back to FCF, but while in the segregation unit, interferon treatment was denied. *Id.* at 14. He was reclassified in March 2001 and sent to the Arkansas Valley Correctional Facility (AVCF).

Mr. Rutherford moved for leave to amend his complaint on April 20, 2001. In his motion to amend, he specifically alleged claims against members of the medical staff at AVCF, stating, *inter alia*, that John Doe medical staff at this facility had confiscated his medically-assigned extra mattress upon his transfer there, refused to replace it, and refused to respond to his requests for medical treatment.

He also included additional post-surgical claims against the staff at FCF, stating that the staff there refused to give him medical attention, had taken his cane and discontinued his pain medication, and that medical staff member "Duane" threatened him with segregation if he did not leave the medical unit without having received care. R. Doc. 29 at 1-3.

The court granted his motion to amend, and on July 2, 2001, Mr. Rutherford tried to amend his complaint by filing a motion asking the court to amend his previous pleadings to add as defendants "Dr. Cabiling's staff" at FMCC and the medical staffs at AVCF and FCF. He included a request for damages for, *inter alia*, "retaliation by Cabling's [sic] staff;" for needless suffering during the time period he was incarcerated at the three facilities; for failure to provide proper "liver treatment;" for "threats by medical staff;" for "retaliation by AVCF staff," and for "medical's failure to treat for assault." R. Doc. 44.

On July 30, 2001, Mr. Rutherford filed a document "seeking to bring to life further information in support of these claims" that contained a hand-written but un-notarized "affidavit." R. Doc. 52. In this document, which we liberally construe as a motion to supplement his complaint, he more specifically set forth his deliberate indifference and retaliation claims against the medical staffs at FMCC, FCF, and AVCF and alleged that their actions and inaction continued to cause him to suffer extreme back and leg pain. *Id.*

He alleged that medical staff at FMCC ignored his pleas for medical examination and treatment and refused to perform x-rays or MRIs until 1999, and recommended exercises and physical therapy that made his back condition worse. He alleged that the staff at FCF failed to administer prescribed medications after his back surgery, discontinued his pain medications, and confiscated his cane. He alleged that the FCF medical staff refused to treat him after a guard allegedly attacked him soon after his surgery, and refused to schedule a follow-up appointment with his surgeon. Upon his transfer to AVCF, he alleged that the staff confiscated his extra mattress, that the medical staff refused to issue another one despite his medical orders, and that the staff had refused to schedule follow-up MRIs, appointments with his surgeon, or to see a doctor. *Id.*

On October 5, 2001, in response to defendants' motions for summary judgment and to dismiss the AVCF and FMCC medical staff members for failure

to state a claim, the magistrate judge made several rulings. She stated it was "not clear" whether Mr. Rutherford intended for his amended complaint to include the claims identified in his April 20 motion. R. Doc. 69 at 4. The magistrate judge did not mention the July 30 affidavit supplementing his claims against the various medical staff members. The magistrate judge ordered Mr. Rutherford to file an amended complaint setting forth all defendants and containing factual allegations to support asserted claims for relief by November 9, 2001. *Id.*

Mr. Rutherford requested an enlargement of time in which to address all of the magistrate judge's October 5 rulings, explaining that he still had not been given a complete copy of his medical file, had limited access to the law library, and had no legal assistance. R. Doc. 79. The court granted a stay of proceedings pending Mr. Rutherford being given a copy of his medical records. Thereafter, Mr. Rutherford complained that his copy of the medical file was not complete and that prison officials confiscated it when they transferred him to yet another facility in February 2002.

In her April 16, 2002, recommendation to dismiss the AVCF and FMCC defendants for failure to state a claim, the magistrate judge noted that Mr. Rutherford still had not complied with the October 5 order to file an amended complaint. Mr. Rutherford objected and requested an enlargement of time in

which to respond to the magistrate judge's recommendations, *see* R. Doc. 136, but the motion was denied.

In his objections, Mr. Rutherford challenged the dismissal of his claims against the AVCF and FMCC defendants, but the district court did not comment on those objections. The district court adopted the magistrate judge's recommendations and dismissed the medical staff members at AVCF and FMCC on its determination that Mr. Rutherford had not made any factual allegations to show that staff members personally participated in a violation of his constitutional rights.

Based on our review of Mr. Rutherford's complaint, his motions to amend, the attachments to those motions, and his July 30 affidavit supplementing his complaint, we conclude that Mr. Rutherford has adequately stated a claim against individual medical staff members at AVCF for deliberate indifference to Mr. Rutherford's serious medical needs by ignoring his neurosurgeon's orders for an extra mattress, and by refusing to respond to his pleas for effective pain medication, for transfer to a hospital for medical treatment, or for a wheelchair.

We also conclude that he has stated additional claims against the individual John Doe medical staff at FCF for retaliation in the confiscation of his cane, discontinuation of his pain medication, refusal to treat him after an assault and threat to send him to segregation for requesting medical care. We remand for

consideration of Mr. Rutherford's Eighth Amendment claims for deliberate indifference against the individual medical staff members of FCF who allegedly refused to administer prescribed interferon treatments while he was in segregation, refused to comply with orders prescribing an extra mattress or to schedule appointments with a doctor or specialist.

We conclude that Mr. Rutherford stated a claim for deliberate indifference to serious medical needs by alleging that the medical staff members at FMCC disregarded his complaints about severe back pain, prescribed exercise and physical therapy that worsened his back condition without first performing tests or examination, delayed referring him to a doctor for medical care, allowed orders for referrals to expire, and failed to schedule prescribed tests, surgery, and follow-up care.

We further conclude that, on the issue of improper administration of interferon treatments, Mr. Rutherford has failed to state cognizable claims against the FMCC medical staff members. An Eighth Amendment claim will not lie for only negligent medical treatment, *see Handy v. Price*, 996 F.2d 1064, 1067 (10th Cir. 1993), and his allegations are supported by evidence indicating that the FMCC medical staff's failures were due to pharmacy or nursing errors or inadvertence, not from deliberate indifference. Regarding his claim that the FMCC medical staff refused to continue to administer a prescribed course of

-19-

interferon treatments when he was first transferred to that facility in 1999, however, we conclude that he has stated a claim for deliberate indifference to a serious medical need.

We have considered all other allegations of error and find them to be without merit.  Accordingly, we affirm the other rulings of the court dismissing defendants Medical Department of Department of Corrections, Robert Flores, Dr. McGarry, Warden Soares, Warden Neet, C/O Egley, P.A. Lawerance, Dr. Wermers, Transport of CDOC, Dolores Montoya, and Offender Services.

Mr. Rutherford's motion to proceed *in forma pauperis* on appeal is GRANTED.  The judgment is AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings consistent with this order and judgment.

Entered for the Court


Stephen H. Anderson
Circuit Judge

**No. 02-1279, <u>Rutherford v. Colo. Dep't of Corr., Med. Dep't</u>**

**BRISCOE, Circuit Judge, concurring and dissenting.**

I concur in Parts I, II, and III of the majority opinion. In particular, I agree that the district court erred in dismissing some of Rutherford's claims due to his failure to pay filing fees, and in granting summary judgment in favor of Dr. Cabling on Rutherford's claims of deliberate indifference and retaliation. I disagree, however, with the portion of Part IV of the majority opinion that discusses and ultimately gives life to allegations set forth in Rutherford's April 20, 2001, motion to amend, and in his July 30, 2001, letter to the district court and accompanying "affidavit." For the reasons outlined below, I believe that the applicable standard of review and Rutherford's failure to file an amended complaint as directed by the district court require us to look only to the claims asserted in Rutherford's original complaint.

I.

Rutherford filed his original complaint on December 5, 2000. Among the defendants listed in the caption were a "John Doe" employed at the Fremont Correctional Facility (FCF) and the "staff of FMCC" (Four Mile Correctional Center). ROA, Doc. 3 at 1. The body of the complaint vaguely suggested that the reference in the caption to "John Doe" was intended to include a "Doctor, NP [presumably nurse practitioner] and PA [presumably physician's assistant]." <u>Id.</u> at 7. With respect to these unnamed persons at FCF, the complaint alleged that

(1) "th[e] facility allowed [Rutherford]'s authorization number (for specialist) to expire," (2) "FCF medical" "ignored and denied" "some orders" written by the specialist who eventually saw Rutherford, (3) Rutherford's request for a second mattress prescribed by the specialist was denied because "of a disagreement between DOC and the medical department" as to who should pay for it, and (4) the medical staff at FCF incorrectly informed plaintiff, in response to his request for pain medication, that his prescription for "Nueronton"[1] was considered a pain medication. Id. With respect to the "staff of FMCC," the body of the complaint alleged that the staff failed to properly order his interferon medication and thereby caused him to miss scheduled treatments. Id. at 7, 11. Finally, there were vague assertions in the body of the complaint that, while housed at FCF, he received sporadic interferon treatment during a 30-day period while in segregation, and that unnamed personnel removed from his cell a drug prescribed for treatment of Hepatitis C, Ribavirin, and thereafter required him to receive this medication from the FCF medical staff. Id. at 13-14.

On April 20, 2001, Rutherford filed a motion for leave to amend his complaint. Id., Doc. 29. The motion specifically sought leave to add the medical staff at the Arkansas Valley Correctional Facility (AVCF) as a defendant. Id. at 1. The motion also, in rambling fashion, alleged that (1) the medical staff at

---

[1] Rutherford presumably meant to refer to the prescription drug Neurontin.

AVCF failed to see him for a period of over one week after he was initially transferred to AVCF, (2) his medically-assigned mattress "was removed, placed back on the transport bus and taken to some unknown facility," (3) "[h]e was denied a permit for a second mattress until this previous mattress could be found and returned," (4) "[h]e was denied a permit for his button-up shirts, which were assigned for a pinched nerve in his neck," (5) "[h]e was denied snacks to counter his 'hypoglycemia,'" (6) the medical staff at AVCF charged him for medical services that he believed he should have received for free, and (7) the medical staff at AVCF required him to make separate appointments for separate medical problems and charged him for each appointment. Id. at 2. Finally, the motion contained what appeared to be additional assertions against a non-medical employee at FCF named "Duane." In particular, the motion alleged that on some unspecified date, Rutherford sought medical attention at FCF and was informed by "Duane" that he would not be seen and would in fact be placed in segregation if he did not leave the medical clinic. Id. at 3.

On June 11, 2001, the magistrate judge conducted a status and scheduling hearing and granted Rutherford's motion, giving him until July 2, 2001, to file an amended complaint. Id., Docs. 42 and 43. On July 2, 2001, Rutherford filed a two-page pleading captioned "Motion to Amend." Id., Doc. 44. The motion asked the district court to amend the caption of the original complaint to include

-3-

the AVCF and FCF medical staffs as defendants, and to amend the "Damages" section of the original complaint in several respects, including assertion of a claim against the AVCF medical staff for "Retaliation" in the amount of $50,000.00. Id. Significantly, however, the motion was silent with respect to the specific allegations Rutherford sought to assert against these defendants. There was also no mention of "Duane," the FCF employee referred to in Rutherford's April 20, 2001, motion for leave to amend.

Rutherford addressed a lengthy handwritten letter to the district judge overseeing the case. The bulk of the letter was under the sub-heading of "Affidavit" and the letter was filed by the district court's clerk's office as a pleading on July 30, 2001. Id., Doc. 52. In the letter, Rutherford alleged, in pertinent part, that after being returned to FCF following surgery, his egg-crate mattress and cane were taken, he was assaulted by the employee who took his cane, and his pain medication ceased. Rutherford also alleged that he had filed numerous "medical kites" with the AVCF medical staff but had not been seen by a physician. At the conclusion of the letter, Rutherford asked for various forms of injunctive relief (e.g., ordering that all pain medications be immediately reissued).

On October 5, 2001, the magistrate judge issued an order addressing several pending matters, including "the purported amendments to plaintiff's

-4-

complaint." Id., Doc. 69 at 1.  Reviewing Rutherford's July 2, 2001, "Motion to

Amend," the magistrate judge noted:

> Plaintiff does not allege any facts in support of his claims against the new defendants.  None of the claims identified in the April 20, 2001 Motion for Leave to Amend are included in the purported amended pleading filed on July 2, 2001.
>
> Under 28 U.S.C. § 1915A, the court screens pleadings filed by a pro se prisoner to determine whether they are frivolous or fail to state a claim upon which relief can be granted.  The court finds that plaintiff's July 2, 2001 amendment fails to state any claims for relief against the new defendants.  Further, it is not clear whether plaintiff intends for his amended complaint to include the claims identified in his April 20, 2001 Motion to Amend.  Because plaintiff is pro se, the court will give him an opportunity to cure the deficiencies in his amendment.

Id. at 3-4.  Accordingly, the magistrate judge ordered

> that on or before November 9, 2001, plaintiff shall file a pleading titled "Amended Complaint" which names all defendants and contains factual allegations to support the asserted claims for relief against each of the defendants.  Plaintiff shall also specify his requested relief against each defendant.  No further amendments will be allowed.

Id. at 4.  Although Rutherford continued to file numerous pleadings in the case,

including a motion to clarify other portions of the magistrate judge's October 5,

2001, order, id., Doc. 72, he failed to file an amended complaint as directed by

the magistrate judge.[2]

---

[2] In its order and judgment, the majority correctly notes that Rutherford filed a "Motion Seeking Enlargement of Time."  ROA, Doc. 79.  Curiously, however, the majority suggests the motion sought "an enlargement of time in which to address

(continued...)

On April 16, 2002, the magistrate judge issued a written recommendation addressing the defendants' dispositive motion. The magistrate judge outlined in detail the history of Rutherford's attempts to amend his original complaint and noted that Rutherford had failed, as directed, to file an amended complaint on or before November 9, 2001. In light of Rutherford's failure "to comply with the court's October 5, 2001 Order to file an amended complaint," the magistrate judge concluded that the "AVCF Med. Staff" and the "Med. Staff of FMCC should be dismissed because the[se] DOC departments are absolutely immune from damages liability and plaintiff has not alleged any factual allegations to show that individual staff members in those DOC departments personally participated in a violation of plaintiff's constitutional rights." Id. at 15-16. As for the medical staff at FCF, the magistrate judge looked to the allegations in Rutherford's original complaint and concluded that Rutherford had asserted a colorable Eighth Amendment claim for denial of interferon treatment while in segregation (but had not alleged a colorable Eighth Amendment claim based upon

_____

[2](...continued)

all of the magistrate judge's October 5 rulings." Maj. Op. at 17. I disagree with this interpretation of the motion. Notably, the motion does not mention the magistrate judge's directive to file an amended complaint. Instead, the motion focuses exclusively on defendants' alleged failure to provide Rutherford with a complete copy of his medical records, and the impact of that alleged failure on Rutherford's ability to respond to defendants' dispositive motion. In any event, it is clear from reviewing the record that the magistrate judge did not extend the November 9, 2001, deadline for filing an amended complaint.

the removal of Ribavirin from his cell). Id. at 16. As for "John Doe (doctor, NP and PA)" at FCF, the magistrate judge concluded that Rutherford's original complaint stated a colorable Eighth Amendment claim for denial of an extra mattress as prescribed by his specialist.[3] Id. In a subsequent recommendation issued on April 23, 2002, the magistrate judge recommended dismissing the two colorable Eighth Amendment claims due to Rutherford's failure to pay the requisite filing fee. Id., Doc. 134.

On May 7, 2002, Rutherford filed a motion to disqualify the magistrate judge and objections to the magistrate judge's April 16, 2002, recommendation. Id., Doc. 140. Although Rutherford obviously disagreed with the magistrate judge's proposed disposition of his claims, he offered no justification for his failure to abide by the magistrate judge's directive to file an amended complaint. Indeed, his pleading was silent with respect to that procedural aspect of the case. Further, Rutherford made no attempt to flesh out his claims against the various medical staffs. At most, Rutherford made vague references to a mattress being taken from him at AVCF and to the FMCC medical staff's failure to properly order his interferon treatments.

---

[3] The magistrate judge apparently overlooked the remaining allegations in the original complaint against these defendants (i.e., that defendants allowed Rutherford's authorization number for a specialist to expire, ignored and denied some orders issued by Rutherford's specialist, and improperly utilized the drug "Nueronton" for management of Rutherford's back pain).

On May 29, 2002, the district court adopted the magistrate judge's recommendation. Id., Doc. 145. Accordingly, the district court in pertinent part dismissed Rutherford's claims against the medical staffs of FMCC and AVCF "for lack of subject matter jurisdiction" and "failure to state a claim on which relief c[ould] be granted." Id. at 4. As for the two colorable Eighth Amendment claims asserted by Rutherford against the John Doe staff members at FCF who denied his interferon treatment and use of a prescribed mattress, the district court dismissed those claims without prejudice due to Rutherford's failure to pay the requisite filing fee. Id. at 4-5.

## II.

As the majority correctly notes at the outset of Section IV of its opinion, we are required to "liberally construe the allegations of a pro se complaint[,] . . . [and] in deciding a motion to dismiss pursuant to Rule 12(b)(6), a court may look both to the complaint itself and to any documents attached as exhibits to the complaint." Maj. Op. at 13 (quoting Oxendine v. Kaplan, 241 F.3d 1272, 1275 (10th Cir. 2001)). After stating the applicable standard, the majority, in my view, then proceeds to misapply the standard. Under the guise of liberally construing a pro se litigant's pleadings, the majority ignores the directive to focus on the allegations in the complaint and instead chooses to focus on vague allegations set forth in Rutherford's April 20, 2001, motion for leave to amend his complaint and

-8-

in his July 30, 2001, letter and "affidavit." Although I question the propriety of doing so even in a routine case, the failure to focus on the allegations in Rutherford's complaint is made more egregious in this case in light of Rutherford's failure to comply with the magistrate judge's October 5, 2001, order to file an amended complaint outlining his claims against each defendant. Given Rutherford's failure, I believe it was proper for the magistrate judge to look only to the allegations in his original complaint rather than, as the majority does here, to "grope through . . . pages of irrational prolix and redundant pleadings, containing matters foreign to the issue involved . . . in order to determine the grounds for the . . . complaint." C. Wright & A. Miller, Federal Practice and Procedure § 1281 at 522 (2d ed. 1990) (internal quotations omitted). The majority ignores the requirements of Federal Rule of Civil Procedure 8(a) ("A pleading which sets forth a claim for relief . . . shall contain . . . (2) a short and plain statement of the claim"), assumes the role of advocate by constructing Rutherford's claims for him, see Peterson v. Shanks, 149 F.3d 1140, 1143 (10th Cir. 1998) ("[W]e do not believe it is the proper function of the district court to assume the role of advocate for the pro se litigant."), and subjects the defendants and the district court to a new round of litigation on "claims" that were nowhere to be found in Rutherford's original complaint.

Because I believe that Rutherford is limited to the claims set forth in his original complaint, I disagree with the majority's decision to recognize and "remand" any "claims" against the medical staffs of AVCF, FCF, or FMCC, or any "John Doe" members thereof, that were contained in pleadings other than the original complaint.