**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 24 2003**

**PATRICK FISHER**
Clerk

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

BRIAN K. STACK,

      Plaintiff-Appellant,

v.

O. LANE MCCOTTER, Executive
Director, Utah Department of
Corrections; J. TERRY BARTLETT,
Director of Institutional Operations at
the Utah State Prison, individual and
official capacity; HAZE LOCKE,
Director, Inmate Placement Program
for the Utah Department of
Corrections; ANNABELLE
FACKRELL, Inmate Administration
Bureau Department of Corrections,
individual and official capacity;
HANK GALETKA, Warden, Utah
State Prison, individual and official
capacity; CRAIG BALLS,
Classification Coordinator, Utah State
Prison, individual and official
capacity; JANET KNUDSEN, Property
Officer at the Utah State Prison,
individual and official capacity; A. L.
CARLSON, Property Officer at the
Utah State Prison, individual and
official capacity; HENRY
SCHWEMMER, Property Officer at
the Utah State Prison, individual and
official capacity; JACK T. EVANS,
Property Administrator at the Utah
State Prison, individual and official
capacity; EDWARD KINGSFORD,

No. 02-4157
(D.C. No. 2:97-CV-466-C)
(D. Utah)

Administrative Services, Utah
Department of Corrections, individual
and official capacity; FRANK
MYLAR, Assistant Attorney General,
Utah Department of Corrections,
individual and official capacity;
DONALD KITCHELL, Sargent, Utah
State Prison, Gunnison, individual and
official capacity; NFN BIGELOW,
Lieutenant, Utah State Prison,
Gunnison, individual and official
capacity; (NFN) FOX, Officer,
Utah State Prison, Gunnison,
individual and official capacity,

Defendants-Appellees.

---

## ORDER AND JUDGMENT *

---

Before **EBEL**, **PORFILIO**, and **McCONNELL**, Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

---

* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Plaintiff-appellant Brian K. Stack appeals from the district court's order awarding summary judgment to defendants O. Lane McCotter and J. Terry Bartlett on Stack's civil rights complaint. Stack brought his complaint pursuant to 42 U.S.C. § 1983, charging, among other things, that McCotter and Bartlett were deliberately indifferent to his serious medical needs. Because we conclude that Stack presented sufficient evidence to survive summary judgment on the issue of these defendants' deliberate indifference, we reverse and remand.

I.

To begin with, we must determine the scope of Stack's appeal. The district court's order granting summary judgment on Stack's second amended complaint was the last in a series of orders that progressively whittled down a much broader complaint about prison conditions. In his initial and first amended complaints, Stack also included claims that we will call his "involuntary servitude" claims. The district court ordered him to omit these claims when he filed his second amended complaint. Stack now seeks to resurrect these claims for purposes of appeal. He states:

> Of all the allegations and contentions filed in [plaintiff's] complaint, he is only pursuing appeal on the claims of denial of medical/dental treatment, cruel and unusual punishment; and involuntary servitude–slavery, equal protection, due process of law, and cruel and unusual punishment regarding the sale of his person to a private corporation that lacked proper authority to imprison plaintiff.

Aplt. Opening Br., at 1.

To determine whether we have jurisdiction over these involuntary servitude claims, we begin by examining Stack's notice of appeal. It states that he intends to appeal from "the decision that was handed down, and filed in this case on July 19, 2002," that is, the district court's summary judgment order. R., Vol. III, doc. 157. Stack makes no mention of the previous order disposing of his involuntary servitude claims.

This omission is not necessarily fatal to appellate review of these claims, however. We have jurisdiction over the district court's order dismissing Stack's involuntary servitude claims, if that order "merged" into its later order granting summary judgment on his second amended complaint. *McBride v. CITGO Petroleum Corp.*, 281 F.3d 1099, 1104 (10th Cir. 2002) ("[A] notice of appeal which names the final judgment is sufficient to support review of all earlier orders that merge in the final judgment."). We hold that it did merge, and we therefore have jurisdiction. *Cf. Harvey v. Waldron*, 210 F.3d 1008, 1011-12 (9th Cir. 2000) (holding notice of appeal from dismissal of amended complaint gave court jurisdiction over appeal from district court's earlier order dismissing defendant judge as absolutely immune, and ordering plaintiff to file amended complaint omitting judge).

In sum, Stack's notice of appeal preserved review of his involuntary servitude claims for appeal. [1] For the reasons stated in the magistrate judge's well-reasoned report and recommendation dated May 27, 1999, *see* R., Vol. I, doc. 56, at 3-7, 9-11 & n.5, however, we hold that the district court properly dismissed the involuntary servitude claims on the merits.

## II.

We turn to the claim for denial of dental care. As mentioned, this claim was resolved on summary judgment.

> Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. We review a grant of summary judgment *de novo*, applying the same standard as the district court. We examine the record to determine whether any genuine issue of material fact was in dispute; if not, we determine whether the substantive law was applied correctly, and in so doing we examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing the motion. However, where the non moving party will bear the burden of proof at trial on a dispositive issue that party must go beyond the pleadings and designate specific facts so as to make a showing sufficient to establish the existence of an element essential to that party's case in order to survive summary judgment.

*Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000).

---

[1] Defendants argue that they are not parties to the involuntary servitude claims. Aplee. Br. at 6. While they were not *served* with the complaints containing these claims, they were *named* in the claims. *See* R., Vol. I, doc. 3 at 12-15, 27-30, 34; doc. 39 at 14-16, 29-32.

At the time of the allegations in Stack's complaint, defendant McCotter was the Executive Director for the Utah Department of Corrections. Defendant Bartlett was the Director of Institutional Operations for the Department of Corrections. Bartlett was one of the signers, on behalf of the State of Utah, of a contract between the Utah Department of Corrections (UDC), and Dove Development Corporation (Dove), a private, for-profit business that runs a prison in Texas. The contract provides that Dove will confine and supervise 100 Utah inmates for one year in exchange for a payment of over two million dollars.

The contract requires Dove to provide "normal psychiatric, **dental** , medication services, and medical services to UDC inmates other than extraordinary health care services." R., Vol. II, doc. 126, ex. B at 2 (emphasis added). "Extraordinary services," for dental care, were defined as services that could not be performed at an on or off-site dentist's office, or those requiring surgery or anaesthesia other than Novocain, similar local anaesthetics or nitrous oxide. *Id.* Dove was responsible for the routine, non-extraordinary dental services.

When Stack arrived at the Dove facility, he was handed a statement of policies for medical services provided by Dove. Among other things, the policy stated:

> DOVE will only pay for extractions (dental).    Do not  ask to go to the dentist unless you are willing to have your tooth pulled. Any other

-6-

dental services must be paid by inmate in advance. If you go to the dentist and the dentist determines you do not actually have a dental problem, your account will be charged for the amount the dentist determines. If you are indigent, disciplinary measures will be taken.

R., Vol. III, doc. 133, ex. 1 at 1.

These limitations are inconsistent with Dove's obligations under the contract and, as will be seen, arguably violate the Eighth Amendment. Dove's restrictive policies set the stage for what happened next. Stack developed periodontitis, an infection of his gums, and spent the next seven months attempting to obtain treatment. In his complaint, Stack details his experiences with Dove's dental care system:

> During this seven (7) month[] period, March to October [1996], the plaintiff[']s gums became infected at least three (3) times where sores developed. Plaintiff[']s gums became swollen in these infected areas with [pus] in them, and he developed bleeding gums, which is still a problem today. To [exacerbate] things further, after the plaintiff finally was taken to the dentist, he was told by this person that he had serious peridontal disease caused by this lack of medical treatment.

> During this seven (7) month period the structures that hold and protect teeth, deteriorated almost to a point where many of the plaintiff[']s teeth were, and are, in danger of literally falling out.

> With the proper care and treatment this situation would not have occurred.

R., Vol. III, doc. 66, at 4.

The evidence of record shows that Stack made numerous attempts to obtain dental care during the seven-month period, but was repeatedly rebuffed by Dove

officials. On April 17, 1996, he filed a medical request stating, "I have some teeth hurting and need care for them." R., Vol. II, doc. 126, ex. C at 1. The response section of the request notes that the request was "Cancelled" because "no guards avail." *Id.* On July 17, 1996, Stack turned in another medical request stating, "I need some filling work done on one possibly two teeth, and I need them cleaned. There may be some other problems I need taken care of also." *Id.* at 2. While the response section notes a plan to refer the complaint to the dentist, the top of the request form states, "Dentist doing extractions only." *Id.*

On July 29, 1996, nearly three and one half months after his initial request, Stack was finally seen by a dentist who noted advanced periodontitis. *Id.* at 3. The dentist prescribed an antibiotic mouthwash and noted the need for a further evaluation for periodontal disease. *Id.* On August 14, 1996, Stack filed another medical request, stating he would "like to have that appointment for the dentist you said was going to happen. I need my teeth worked on to help get rid of some of this pain as well as fix about two of them that need help." *Id.* at 4. There was no response to this request. On September 4, 1996, Stack filed another request, stating he had "Sore teeth that need to be fixed." *Id.* at 5. The response noted that "Dentist is doing extractions only at this time per his secretary" but scheduled an appointment for October 16, 1996. *Id.*

At the October 16, 1996 appointment, Dr. Grander saw Stack. His notes indicate that Stack needed $419.00 worth of dental work. Apparently, UDC agreed to pay for the work, and in late October 1996, seven months after his teeth problems began, Stack finally received the necessary dental care to solve his acute problems. Dr. Grander noted on October 28, however, that Stack's long-term prognosis for the affected teeth was poor. *Id.* at 8.

The magistrate judge assigned to this case recommended that the district court deny Bartlett and McCotters' motion for summary judgment. *See* R., Vol. III, doc. 144. While the parties disputed the seriousness of plaintiff's dental conditions, he found that "there is enough evidence [of objective seriousness to survive summary judgment] showing that plaintiff had to endure pain for several months while waiting to get adequate treatment." *Id.* at 3. He further stated that "[i]t was defendants' duty, as administrators of UDOC to make sure that Dove, the contractor, was abiding by constitutional requirements to provide safe conditions to inmates under their control." *Id.* at 4. In finding that Bartlett and McCotter were affirmatively linked to plaintiff's injury, the magistrate judge relied solely on their general duty to supervise the dental care provided to inmates or to "provide an adequate contract obligation and make sure that Dove did not violate the constitutional rights of UDOC inmates." *Id.* at 8.

Bartlett and McCotter filed objections to the magistrate judge's report and recommendation. The district court rejected the recommendation, and granted summary judgment. It held that Dove's dental policy did not cause Stack serious harm, because Dove eventually did pay for Stack's treatment. R., Vol. III, doc. 155, at 6. It further found that Stack had failed to show that the defendants were aware that Dove had delayed his treatment. *Id.* at 8.

"[A] prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation alleged must be, objectively, sufficiently serious . . . [Second,] a prison official must have a sufficiently culpable state of mind." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quotations omitted). "In prison-conditions cases that state of mind is one of deliberate indifference to inmate health or safety." *Id.* (quotation omitted). We now consider whether Stack has shown sufficient evidence of each of these elements to survive summary judgment.

1. **Sufficiently serious medical need**

"A medical need is sufficiently serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000) (quotation omitted). "[D]ental care is one of the most important medical needs of inmates." *Ramos v. Lamm*,

639 F.2d 559, 576 (10th Cir. 1980). "Accordingly, the [E]ighth [A]mendment requires that prisoner be provided with a system of ready access to adequate dental care." *Hunt v. Dental Dep't*, 865 F.2d 198, 200 (9th Cir. 1989). At least one court has held that a policy of requiring that only extractions will be performed for dental problems is constitutionally deficient. *Heitman v. Gabriel*, 524 F. Supp. 622, 627 (W.D. Mo. 1981) ("While it is by no means unprecedented for an old-fashioned prison regime to offer tooth extraction as the only dental care, no case has been found where such a limitation has been deemed judicially tolerable") (quotation and citation omitted).

Once he was finally able to see a dentist, that dentist diagnosed Stack with advanced periodontitis. Periodontitis

> usually begins with gingivitis. Abundant calculus deposits beneath the gingival margin are characteristic. The gingivae progressively lose their attachment to the teeth, and bone loss begins so that the periodontal pockets deepen. Destruction of the supporting osseous tissue is evident radiographically. With progressive bone loss, teeth may loosen and gingivae recede. Tooth migration is common in later stages. Pain is usually absent unless an acute infection (e.g. abscess formation in one or more periodontal pockets) supervenes.

*Merck Manual of Diagnosis & Therapy* at 768-69 (17th ed. 1999).

Stack states in his complaint that during the time he did not receive treatment, his gums were swollen with pus and were bleeding. This suggests an acute infection. His requests for medical assistance referred to the pain he was suffering because of his untreated dental condition. He states that his teeth are

-11-

now in danger of falling out because of progressive bone loss associated with his disease.

In their appellate brief, Bartlett and McCotter do not dispute the severity of Stack's symptoms prior to treatment.[2] Since he eventually received satisfactory treatment, however, they classify this as a matter of delay rather than denial of treatment. In the district court, they cited *Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993), for the proposition that delay in medical care is actionable under the Eighth Amendment only where the delay results in "substantial harm." They argue that since Stack received treatment that resolved his pain and cured his dental problems, he was not substantially harmed.

The evidence in the record is ambiguous on the question of whether Stack suffers any lingering effects from the delay in treatment. At his deposition he stated that his teeth were "pretty weak" and were still "loose." R., Vol. II, doc. 126, ex. A at 37. He stated in his response to summary judgment that the

---

[2] In their district court summary judgment brief, defendants argued that "although plaintiff was experiencing some discomfort, his dental condition was not so serious as to require immediate treatment." R., Vol. II, doc. 126, at 7. The only evidence defendants offered for this proposition was the medical request forms themselves, which defendants claimed requested only "generic, routine cleaning, filling, type dental treatment." *Id.* Defendants have mischaracterized the record. Stack stated on the forms that he was suffering pain, not "some discomfort." He repeatedly stated that his teeth needed work, not just cleaning or fillings. The dentists who examined him determined that he had advanced periodontitis, requiring over four hundred dollars' worth of dental treatment.

delay caused him loss of bone mass around his teeth. *Id.* Vol. III, doc. 133, at 8. [3]

On the other hand, he admitted that the treatment he eventually received resolved his problem with tooth pain. *Id.* Vol. II, doc. 126, at 31. He described his problems as "taken care of," *id.* at 36, and admitted that he did not ask to see a dentist after he returned from Texas, *id.* at 37-38. *See also* R., Vol. III, doc. 133, at 4 (admitting, in response to summary judgment, that Stack "finally received dental care that solved his dental concerns").

Thus, the evidence concerning permanent damage due to delay in treatment is equivocal. Stack is, of course, entitled to have reasonable inferences drawn in his favor on summary judgment. More importantly, even if Stack cannot show permanent injury, that is not fatal to his delay claim. Under circuit precedent, pain itself can be considered substantial harm resulting from delay, giving rise to a cause of action for deliberate indifference.

A prime example of this principle can be found in *Sealock*, 218 F.3d at 1205. In that case, the defendants delayed treatment of plaintiff's heart attack symptoms. Although it was clear that plaintiff had in fact suffered a heart attack and had been in severe pain during the hours it took defendants to finally provide him with treatment, the district court rejected plaintiff's claim because he "failed

---

[3]    While this was a statement in a brief rather than summary judgment evidence, it is consistent with Stack's other evidence admissible in summary judgment proceedings.

-13-

to show that the delay in receiving medical treatment caused him any injury." *Id.* at 1210. This court disagreed with the district court, stating that although plaintiff "did not present specific medical evidence of damage to his heart resulting from the delay," since "[t]he pain and suffering imposed by [defendant's] failure to get him treatment lasted several hours," the objective element of deliberate indifference was established by the pain itself. *Id.*

*Sealock*'s holding is limited, because "not every twinge of pain suffered as the result of delay in medical care is actionable." *Id.* The evidence here, however, coupled with the result in other cases, suggests that the pain Stack suffered was not *de minimus*. The Eighth Circuit, for example, upheld the denial of summary judgment to a prison doctor who waited three weeks to refer an inmate who had an impacted and infected wisdom tooth to an oral surgeon. *Boyd v. Knox*, 47 F.3d 966, 969 (8th Cir. 1995). It held that "[a] three-week delay in dental care, coupled with knowledge of the inmate-patient's suffering, can support a finding of an Eighth Amendment violation under section 1983." *Id.* Stack's treatment was delayed considerably longer than three weeks. There is, then, at the very least a summary judgment issue about whether Stack met the "sufficiently serious" criteria for an Eighth Amendment claim.

2. **Deliberate indifference**

We turn to the subjective, deliberate indifference element. The subjective component of the Eighth Amendment test is met if the defendant "knows of and disregards an excessive risk to inmate health or safety." *Sealock*, 218 F.3d at 1209 (quotation omitted). The district court viewed Stack's complaint as alleging two forms of deliberate indifference. First, that Bartlett and McCotter knew that adequate dental services were unavailable at Dove, and that Dove had developed a policy that permitted only extractions. Second, that they had specific notice that Stack had a serious dental condition for which treatment had been unreasonably delayed.

A. **Extraction-only policy**

Most of the district court's discussion dealt with the first assertion of deliberate indifference: whether the defendants had knowledge of Dove's deficient dental policy. The district court relied on its finding that the dental policy did not harm Stack, because he eventually received treatment. As we have seen, however, that analysis begs the question, because Stack's claim is based in part on *delay* in receiving treatment, which can be attributed to the policy.

It is undisputed that one of the reasons Stack was given for treatment delay was that Dove's dentist was only performing extractions. As the evidence shows, the "extraction only" policy was not used merely as a device for specifying the

type of care inmates could receive. [4] It was also used as a device for unreasonably delaying treatment.

The mere fact that Dove did not adhere to the contract or provide constitutionally-adequate dental care is not enough, by itself, to show deliberate indifference on the part of Bartlett and McCotter. To be held liable under § 1983 for deliberate indifference, an official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

Despite the high standard erected by *Farmer*, the magistrate judge attempted to hold the defendants responsible based on supervisory duty alone, stating that it was their duty, "as administrators of UDOC to make sure that Dove, the contractor, was abiding by constitutional requirements to provide safe conditions to inmates under their control." R., Vol. III, doc. 144, at 4. Unfortunately, he cited no authority for this proposition, and we have found none. In fact, unpublished authority from this circuit is to the contrary. *Florez v.*

---

[4] Thereby possibly triggering the rule that inmates who merely have a disagreement with their medical providers cannot claim deliberate indifference. *See Harrison v. Barkley*, 219 F.3d 132, 144 (2d Cir. 2000) (Meskill, J., dissenting) (arguing that patient could not insist on particular dental procedures because a prisoner "has no right to dictate the type or scope of care that he receives") (quotation omitted).

*Johnson*, 63 Fed. Appx. 432, 436 (10th Cir. Mar. 28, 2003) (citing *Ledbetter v. City of Topeka*, 318 F.3d 1183, 1187 (10th Cir. 2003)).

That said, the point the magistrate judge made about DOC's contractual arrangement with Dove is important. The relationship between DOC and Dove is a *necessary* one for imposition of § 1983 liability on DOC officials, because it establishes DOC's indirect responsibility for the treatment Utah inmates received at Dove. It is not, however, a *sufficient* one, because under *Farmer*, liability may only be imposed based on deliberate indifference. Stack must show more to hold Bartlett and McCotter liable.

### B. **Defendants' specific knowledge**

Stack did provide three pieces of evidence to demonstrate that Bartlett and McCotter specifically knew he was being denied dental care, and failed to act: (1) a copy of a petition for writ of mandamus filed in Utah State Court against McCotter; (2) a copy of a mandamus petition filed in Utah State Court against McCotter and Bartlett; and (3) his "Declaration of Brian K. Stack," in which he states that Bartlett met with him in Texas and listened to the complaints he had about dental care. *See* R., Vol. III, doc. 134.

The district court did not mention Stack's declaration. Stack filed it the same date as his summary judgment brief, signed it under oath, and plainly intended it to be part of his summary judgment response. In the declaration,

-17-

Stack states, "Defendant Bartlett met with me in section 'C' of the Frio County Detention Center when he came down for the inspection he did, and listened to the medical complaints I had concerning dental." *Id.* at 2.

Stack's declaration does not state the exact date when Bartlett met with him or precisely what his complaints were about his dental care. Nevertheless, as the non-movant in summary judgment proceedings, Stack is entitled to reasonable inferences from the evidence he did provide. If Stack's teeth were hurting, his gums were bleeding and full of pus, and Dove officials were ignoring his dental care requests, it seems reasonable to infer that these were the things he discussed with Bartlett, not some "general dissatisfaction with the Dove facility's medical or dental policy" as defendants contend. Aplee. Br. at 14. Moreover, Bartlett admits that he visited the Dove facility during the time Stack was confined there (although he does not recall any conversation with Stack). R., Vol. II, doc. 126, ex. D.

Turning to the second piece of evidence concerning Bartlett and McCotters' knowledge, the district court's analysis of the mandamus petition filed against them (Utah District Court No. 960900312CV) on January 5, 1996, seems correct. The district court found that the petition only contained generalized allegations complaining about the Dove's "extraction only" policy. The most specific statement Stack made in the petition about dental care was that "[d]isciplinary

measures per the Dove Corporation's statements *can be initiated* against a prisoner similar to petitioner who has complained about teeth in pain, (for example) and does not want his teeth pulled." R., Vol. III, doc. 133, ex. 3, at 3 (emphasis added). A careful reading shows that this is not a statement that Stack had actually complained about tooth pain; only that he might be disciplined if he did. Moreover, the petition dates from January 1996, before Stack began complaining about his problems with periodontitis.

As the district court noted, however, the mandamus petition filed against McCotter on September 12, 1996 (Utah District Court No. 960906449) contained the same allegations Stack raised in his complaint in this case. No one could read this mandamus petition and be unaware of the seriousness of Stack's needs and the inadequate treatment he was receiving from Dove. The district court nevertheless rejected this petition as evidence of deliberate indifference, on the ground that Stack failed to present evidence that the petition had actually been served on McCotter.

Service of a complaint is evidenced in several ways. One source of evidence is the state district court docket sheet. This is an official court record in a related state court case, subject to judicial notice. *See* Fed. R. Evid. 201; *St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169, 1172 (10th Cir. 1979). McCotter did not actually deny that the petition was served on him, but his

statement that Stack failed to *prove* that it had been served evidently was sufficient to forestall further inquiry by the district court.

Acting under our power to take judicial notice of related proceedings, *see St. Louis Baptist Temple*, 605 F.2d at 1172, we have obtained and reviewed a copy of the state district court docket sheet in the mandamus proceeding. The docket sheet plainly shows that the mandamus petition was filed on September 13, 1996, that defendant McCotter was represented in the action by an attorney, that the district court ordered the respondents, including McCotter, to file an answer on October 1, 1996, and that he filed a motion to stay the order requiring a response on October 15, 1996. Stack ultimately dismissed the mandamus petition, as it became moot once he received the dental treatment he had sought.

Perhaps recognizing the weakness in their "no proof of service" argument, defendants now attempt to argue that the mandamus petition does not prove deliberate indifference because "during its pendency, Dove requested and received funding from UDOC to cover the cost of plaintiff's dental care." Aplee. Br. at 13. In other words, because UDOC approved payment for Stack's dental care, which Stack finally received in late October 1996, McCotter was not deliberately indifferent for failing to take immediate action on the mandamus petition filed six weeks before and served on him no later than October 1.

There is no evidence, however, that defendants made this argument before the district court. They had every opportunity to do so, in their reply to Stack's response to their motion for summary judgment. *See* R., Vol. III, doc. 139, at 3. This court can, of course, affirm the grant of summary judgment for any reason that appears in the record. We decline to do so in this instance, however, because defendants' argument does not establish, as a matter of law or undisputed fact, lack of notice or lack of deliberate indifference. Their barely articulated premise that the mandamus petition somehow sent McCotter to the rescue, causing him to approve treatment that ultimately resolved Stack's problems, finds scant support in the record, and substantial factual questions remain on the deliberate indifference issue.

## III.

To summarize, we hold that the district court properly dismissed Stack's "involuntary servitude" claims, and ordered him to file an amended complaint omitting them. The district court improperly granted summary judgment on Stack's claim involving his dental care, however, as genuine issues of material fact remain on this record concerning Bartlett and McCotters' deliberate indifference to Stack's serious medical needs.

The judgment of the United States District Court for the District of Utah is AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings in accordance with this order and judgment.

Entered for the Court


David M. Ebel
Circuit Judge