**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 11 2000**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

RICHARD J. SEALOCK,

        Plaintiff-Appellant,

v.

STATE OF COLORADO; ROY
ROMER, as Governor of the State of
Colorado; COLORADO
DEPARTMENT OF CORRECTIONS;
RENEE HUBER, an individual; ROY
HAVEN, an individual; NANCY
FRENCH, an individual; JOSEPH
BARRETT, an individual; STEVE
RUIZ, an individual,

        Defendants-Appellees.

No. 99-1185

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. No. 97-S-111)

---

Submitted on the briefs:

Robert C. Ozer of Ozer & Ozer, P.C., Denver, Colorado, for Plaintiff-Appellant.

Ken Salazar, Colorado Attorney General, Grace A. Belsches, Special Assistant
Attorney General, Denver, Colorado, for Defendants-Appellees.

---

Before **BALDOCK** , **HENRY** , and **MURPHY** , Circuit Judges.

**HENRY** , Circuit Judge.

Appellant Richard J. Sealock appeals from the district court's order granting summary judgment to the appellees on his complaint brought pursuant to 42 U.S.C. § 1983.  We affirm in part, and reverse in part.        [1]

## I.

The facts of this case, adduced for summary judgment purposes, are presented in the light most favorable to appellant, and we have given him the benefit of every reasonable inference therefrom.      See Mann v. United States  , 204 F.3d 1012, 1016 (10th Cir. 2000).  At the time of the events giving rise to this case, appellant was incarcerated at Arrowhead Correctional Facility. Appellant awoke at 1:30 a.m. on January 23, 1996.  He was sweating so heavily that his bed and clothing were soaked.  He felt unwell.  Appellant asked his roommate at the facility, Zack Bernal, to summon a correctional officer.

---

[1]     After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal.    See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

In response to Bernal's entreaty, Officer Nancy French appeared at appellant's cell. She observed that appellant was sweating, vomiting and appeared very pale. Appellant told her he had a crushing pain in his chest, he had trouble breathing, and he had been vomiting all night. [2] French told him that there was nothing she could do, and that he would have to wait until six a.m. because there was no one at Clinical Services. She told appellant to let her know if he got worse.

Appellant lay in bed for another hour; the chest pain got worse. [3] He asked Bernal to go back and get French again. She showed up about five minutes later with the shift commander, Sergeant Barrett. Bernal told Barrett that appellant was having a heart attack. Appellant told Barrett he was having chest pain and might be having a heart attack. Barrett told appellant there was nothing he could do for him. Barrett stated there was no one at Clinical Services, it would take an hour to get the van warmed up, and it was snowing outside. Barrett offered appellant an antacid, which he declined. Appellant testified that Barrett told him: "Just don't die on my shift. It's too much paper work." Appellant's App., Vol. I at 103.

---

[2] French denies that appellant told her about his chest pain, trouble breathing or vomiting. She claims he merely stated that he didn't feel good.

[3] French's version of events does not contain the one-hour delay.

-3-

Sometime later, French told appellant she had spoken to someone about his situation, who had told her to give him two Tylenol. She gave him the Tylenol and told him that he could see a physician's assistant at six a.m.

Appellant arrived at the infirmary at six a.m. There, he told nurse Renee Huber that he had chest pain and couldn't breathe. She told him that he had the flu and that there was nothing she could do for him until the physician's assistant arrived at 8:00 a.m. Huber made the following notes after examining appellant:

C/O throat pain, nausea & vomiting. States he's been throwing up all night & now having dry heaves.

Temp. <u>96.2</u> Pulse <u>76</u> Resp. <u>18</u> B/P <u>110/68</u>

Lungs clear. Skin warm & dry. Had dry heave episode in clinic expelling clear fluid. States that he had sweats all night & unable to sleep. States he was having [a lot] of throbbing pressure pain in chest and throat–burning sensation. Unable keep [illegible] or Tylenol down.

Appellant's App., Vol. II at 335.

Huber spoke to P.A. Roy Havens at approximately 8:00 a.m. Huber testified that she read Havens the above notes, including the reference to "throbbing pressure pain in chest and throat." Havens testified, however, that Huber never mentioned chest pain to him over the telephone. If she had, he said, he would have called an ambulance immediately.

Based on the information he received from Huber, Havens ordered Huber to give appellant a shot of Phenergan. She gave him the shot and at Havens' instruction, ordered a lay-in for the rest of the day. Appellant stayed in bed until the next day, January 24th. He testified he felt so bad that he thought he was dying.

The next day, the infirmary approved another 24 hour lay-in. Appellant was told that he would be seen at noon or 1:00 p.m. Appellant arrived at the infirmary at 1:00 p.m. He told the nurse there that his chest was killing him, he couldn't breathe, and that the pain had traveled into his arms.

P.A. Quackenbush arrived and administered an EKG. He told appellant there had been some changes in his heart. He gave appellant nitroglycerin and ordered an ambulance. Appellant was taken to St. Thomas More Hospital and later to Parkview Hospital, where it was determined that he had suffered a major heart attack. Appellant asserts that after he returned from Parkview, appellee

Steve Ruiz forced him to climb stairs, in violation of his doctor's orders, which caused him further chest pain and a return to the hospital.

Appellant thereafter brought this civil rights action against the appellees. In addition to his § 1983 claim, he alleged pendent state law claims and a claim for declaratory judgment that Colo. Rev. Stat. § 24-10-106(1.5)(a) is unconstitutional. A magistrate judge assigned to the case recommended that summary judgment be granted on all of appellant's § 1983 claims, except the claim against Sergeant Barrett. The district court rejected the magistrate judge's recommendation as to Sergeant Barrett and granted summary judgment for appellees on all of appellant's claims.

## II.

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. We review a grant of summary judgment *de novo*, applying the same standard as the district court. We examine the record to determine whether any genuine issue of material fact was in dispute; if not, we determine whether the substantive law was applied correctly, and in so doing we examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing the motion. However, where the non moving party will bear the burden of proof at trial on a dispositive issue that party must go beyond the pleadings and designate specific facts so as to make a showing sufficient to establish the existence of an element essential to that party's case in order to survive summary judgment.

McKnight v. Kimberly Clark Corp. , 149 F.3d 1125, 1128 (10th Cir. 1998) (quotations and citations omitted).

## III.

A prison official's deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment. See Estelle v. Gamble , 429 U.S. 97, 102 (1976). "Deliberate indifference" involves both an objective and a subjective component. The objective component is met if the deprivation is "sufficiently serious." Farmer v. Brennan , 511 U.S. 825, 834 (1994). A medical need is sufficiently serious "if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Hunt v. Uphoff , 199 F.3d 1220, 1224 (10th Cir. 1999) (quoting Ramos v. Lamm , 639 F.2d 559, 575 (10th Cir. 1980) (further quotation omitted)). The subjective component is met if a prison official "knows of and disregards an excessive risk to inmate health or safety." Farmer , 511 U.S. at 837.

1. Nancy French

In his report and recommendation dated February 9, 1999, the magistrate judge recommended that summary judgment be granted in favor of all of the appellees, with the exception of Joseph Barrett. Appellant filed timely objections to the magistrate judge's recommendations. In these objections, however, he did

not contest the magistrate judge's recommendations that summary judgment be granted in favor of appellee Nancy French. For this reason, under our "firm waiver rule," he is barred from challenging the district court's order granting summary judgment to French on his Eighth Amendment claim. See Vega v. Suthers, 195 F.3d 573, 579-80 (10th Cir. 1999); United States v. One Parcel of Real Property, 73 F.3d 1057, 1059 (10th Cir. 1996). We therefore affirm summary judgment in favor of French.

2. Joseph Barrett

Appellant asserts that appellee Joseph Barrett unconstitutionally delayed his receipt of medical treatment. Although Barrett disclaims any recollection of the events, the following reasonable inferences concerning his conduct may be drawn from the testimony of other witnesses for purposes of summary judgment consideration. Barrett observed appellant at a time when he was very pale, sweating and had been vomiting. Both appellant and Zack Bernal, appellant's roommate, told Barrett that appellant was or might be having a heart attack.[4] Barrett refused to transport appellant immediately to a doctor or a hospital

---

[4] The district court oppugned this testimony as "20/20 hindsight testimony of Plaintiff and Bernal." Appellant's App., Vol. II at 488. It is not the task of a court considering summary judgment to weigh the evidence. See True v. United States, 190 F.3d 1165, 1176 (10th Cir. 1999).

because it was snowing outside and it would take time to warm up the prison van for transportation. Finally, Barrett told appellant not to die on his shift.

We consider, first, whether appellant's need was "sufficiently serious" to meet the objective element of the deliberate indifference test. Delay in medical care only constitutes an Eighth Amendment violation where the plaintiff can show that the delay resulted in substantial harm. See Olson v. Stotts, 9 F.3d 1475, 1477 (10th Cir. 1993). The district court concluded that appellant failed to show that the delay in receiving medical treatment caused him any injury.

Appellant presented general evidence that time is of the essence when someone is experiencing a heart attack. He did not present specific medical evidence of damage to his heart resulting from the delay. Even if appellant failed to show that his heart was damaged by the delay, however, we believe he has shown that his need was sufficiently serious to require prompt medical attention. [5]

Appellant presented evidence that he suffered from severe chest pain which he reasonable believed was caused by a heart attack. The pain and suffering imposed by Barrett's failure to get him treatment lasted several hours. The Eighth Amendment forbids "unnecessary *and wanton* infliction of *pain*." Wilson v.

---

[5] To the extent appellees make a causation-based argument that Barrett's action or inaction did not cause appellant any injury, this argument also must fail. Although Barrett did not cause appellant's heart attack, there is factual evidence from which a jury could conclude that the delay occasioned by his inaction unnecessarily prolonged appellant's pain and suffering.

Seiter, 501 U.S. 294, 297 (1991) (emphasis added; quotation omitted); cf. also Jones v. Johnson, 781 F.2d 769 (9th Cir. 1986) (holding pain and suffering and inability to work resulting from untreated hernia stated cause of action under Fourteenth Amendment). Certainly, not every twinge of pain suffered as the result of delay in medical care is actionable. The evidence in this case, however, sufficiently establishes the objective element of the deliberate indifference test.[6]

The facts, as discussed above, also demonstrate for summary judgment purposes that Barrett knew of and disregarded the excessive risk to appellant's health that could result from the delay. There is evidence that Barrett was informed that appellant might be having a heart attack, and that he was present when appellant displayed symptoms consistent with a heart attack. Barrett allegedly refused to drive appellant to the hospital, and told appellant not to die on his shift. Appellant has met the subjective element of the deliberate indifference test for purposes of summary judgment. We therefore reverse summary judgment in favor of Barrett on appellant's Eighth Amendment claim.

3. Renee Huber

---

[6] We are aware of the limitation on actions by prisoners for mental and emotional injuries without a prior showing of physical injury. See 42 U.S.C. § 1997e(e). Assuming without deciding that physical pain constitutes "mental or emotional injury" within the meaning of the statute, appellant satisfies the statutory requirement because he has made a prior showing of physical injury, i.e. his heart attack.

We agree with the district court that Renee Huber is entitled to summary judgment. At worst, she misdiagnosed appellant and failed to pass on information to P.A. Havens about appellant's chest pain. Appellant has failed to show that she was deliberately indifferent to his serious medical needs.

4. Roy Havens

The district court found that P.A. Roy Havens was at most negligent and was therefore not liable for deliberate indifference. Our cases recognize two types of conduct constituting deliberate indifference. First, a medical professional may fail to treat a serious medical condition properly. Where this sort of conduct is alleged, the medical professional has available the defense that he was merely negligent in diagnosing or treating the medical condition, rather than deliberately indifferent. See, e.g. , Estelle , 429 U.S. at 105-06.

The second type of deliberate indifference occurs when prison officials prevent an inmate from receiving treatment or deny him access to medical personnel capable of evaluating the need for treatment. See, e.g. , Ramos , 639 F.2d at 575. Ordinarily, a medical professional will not be liable for this second kind of deliberate indifference, because he is the person who provides the treatment. If, however, the medical professional knows that his role in a particular medical emergency is solely to serve as a gatekeeper for other medical personnel capable of treating the condition, and if he delays or refuses to fulfill

-11-

that gatekeeper role due to deliberate indifference, it stands to reason that he also

may be liable for deliberate indifference from denying access to medical care.

At his deposition, P.A. Havens testified as follows:

[I]f there's a nonexplained chest pain, there's a standard thing we all do; that is, they should call the ambulance, and paramedics will come out. In the mean time, they can go ahead and do an EKG and have that finished for the ambulance and take to the hospital. The standard procedure is, they all go to the hospital for a cardiac workup. The reason I'm expounding on that is, if we've got somebody with nausea, vomiting and throbbing severe chest pain, the red lights [come] on. It's time to take them to the hospital. *I don't need to see him. I don't need to do anything more. He needs emergency at that time. Call the ambulance.* That is the standard procedure I would do for any chest pain I don't have a reason for.

Appellant's App., Vol. II at 380 (emphasis added).

If I would have been told those words [chest pain], then, there's just one thing we do. It's not like I'm going to sit and think about this for [a while], or I'm going to call somebody, no. There's one thing we do, we send them, that's it. There's no negotiating, at least not for me, ever. In four years, chest pain that I don't know why, the nurse doesn't know why, they go. Even if they were there this morning, they came back, they've got more chest pain, back again.

Id. at 382.

From this candid testimony, we conclude that *if* Havens knew that appellant

had unexplained chest pain, it would have been more than mere "malpractice" or

"negligence" to fail to call an ambulance. Havens admits that if he had been told

about chest pain, he would not have needed to conduct further diagnosis or

treatment of appellant; his duty was to get help for appellant from paramedics and

-12-

other medical sources. He knew that unexplained chest pain posed a serious risk to appellant's health. Failure to summon an ambulance would have disregarded that risk, arguably constituting deliberate indifference to a serious medical need.

Havens testified that he was never told about the unexplained chest pain. This may be true. There is a conflict in the evidence, however, because Huber stated that she did tell him about the chest pain. [7] Moreover, the medical record from which she read to him includes a reference to throbbing chest pain. [8] We cannot resolve this factual issue on summary judgment. If Havens did know about the chest pain, by his own testimony he may have been deliberately indifferent in failing to summon the ambulance. For this reason, we must reverse summary judgment in favor of Havens.

5. Steve Ruiz

Appellant's claim against Ruiz suffers from the same procedural deficit as his claim against Nancy French. Appellant failed to object to the magistrate

---

[7] Huber stated, unlike Havens, that she did not consider the chest pain to be a cardiac symptom. Thus, as noted above, she at most made a misdiagnosis, and may have failed to communicate properly with Havens. These errors do not rise to the level of deliberate indifference on her part.

[8] Havens testified that after he heard that appellant had suffered a heart attack, he went back over appellant's chart. He did not find any mention of throbbing chest pain. Upon re-reading the chart a second time, however, he discovered the notation mentioning chest pain in Huber's notes, which he did not remember reading the first time.

judge's recommendation that summary judgment be granted to Ruiz. We therefore affirm summary judgment in favor of Ruiz.

IV.

Appellant also contends that the district court erred in granting summary judgment on his claim that Colo. Rev. Stat. § 24-10-106(1.5)(a) is unconstitutional. This section of the Colorado statutes excludes from the state's waiver of sovereign immunity for tort suits actions brought by "claimants who have been convicted of a crime and incarcerated in a correctional facility or jail pursuant to such conviction."  Id.  It further provides that "such correctional facility or jail shall be immune from liability."  Id.  Appellant complains that he is treated differently from those injured by operation of a correctional facility who have not been convicted of a crime and incarcerated pursuant to their conviction.

The district court carefully analyzed appellant's claim. It concluded that the rational basis test applied to appellant's equal protection claim, and that § 24-10-106(1.5)(a) is rationally related to legitimate state interests. Having conducted a de novo review of the issue, we agree. For substantially the same reasons detailed in the district court's order of February 9, 1998, we affirm the grant of summary judgment on appellant's equal protection claim.

Appellant further argues, however, that § 24-10-106(1.5)(a) deprives him of a property interest without due process, and denies him access to the courts in

-14-

violation of the Equality of Justice provision of the Colorado constitution. [9] As appellant admits, his due process claim fails if the challenged provision is rationally related to a legitimate state purpose. We have already affirmed the district court's finding that the provision meets this test.

We also affirm the district court's rejection of appellant's claim concerning access to the courts. Article II, Section 6 of the Colorado Constitution provides in pertinent part that "[c]ourts of justice shall be open to every person, and a speedy remedy afforded for every injury to person, property or character." This section does not create any substantive right in a prospective litigant; rather, it creates "a procedural right to a judicial remedy whenever the [Colorado] General Assembly creates a substantive right under Colorado law." Simon v. State Compensation Ins. Auth., 903 P.2d 1139, 1143-44 (Colo. Ct. App. 1994), rev'd on other grounds, 946 P.2d 1298 (Colo. 1997). Moreover, the section does not prevent the general assembly from changing a law which creates a right, or from placing valid limitations on a remedy. See Norsby v. Jensen, 916 P.2d 555, 563-64 (Colo. Ct. App. 1995). Appellant fails to show that the Colorado general assembly violated Article II, Section 6 when it adopted § 24-10-106(1.5)(a) limiting the state's waiver of immunity in 1994.

---

[9]    Appellees argue that appellant failed to raise these issues in the district court. This is incorrect. See Appellant's App., Vol. I at 93-95.

The judgment of the United States District Court for the District of Colorado is AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings in accordance with this opinion.