F I L E D
United States Court of Appeals
Tenth Circuit

DEC 9 2003

PATRICK FISHER
Clerk

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

RICK D. ROSE,

      Plaintiff-Appellant,

v.

RONALD BECKHAM, in his official
capacity as the Sheriff of Jefferson
County; KAREN BAKER; DAVID
GRAYSON, M.D., in their official
capacities,

      Defendants-Appellees,

  and

DAVID SOLIS,

      Defendant.

No. 02-1266
(D.C. No. 98-WM-1646 (CBS))
(D. Colo.)

**ORDER AND JUDGMENT** *

Before **SEYMOUR** , **BRISCOE** , and **LUCERO** , Circuit Judges.

---

\*     The case is unanimously ordered submitted without oral argument pursuant
to Fed. R. App. P. 34(a)(2) and 10th Cir. R. 34.1(G). This order and judgment is
not binding precedent, except under the doctrines of law of the case, res judicata,
and collateral estoppel. The court generally disfavors the citation of orders and
judgments; nevertheless, an order and judgment may be cited under the terms and
conditions of 10th Cir. R. 36.3.

Rick D. Rose brought this action under 42 U.S.C. § 1983 against Ronald Beckham, the Jefferson County Sheriff, Karen Baker, the Health Services Administrator for the Jefferson County Detention Center, and Dr. David Grayson, the Center's Medical Services Supervisor. [1] Contending that a delay in medical treatment for his hip and the resultant pain were the result of the defendants' deliberate indifference to his serious medical needs, Rose claimed a violation of his Eighth Amendment rights. The district court granted defendants' motion for summary judgment; exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

We review the grant of summary judgment de novo, viewing the facts of the case in the light most favorable to the plaintiff and giving him the benefit of every favorable inference. Sealock v. Colorado, 218 F.3d 1205, 1209 (10th Cir. 2000). "Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Id.

I

Rose fell and fractured his femur in May 1996, and doctors repaired the break with screws and a metal plate. On July 29, 1996, upon his incarceration in

---

[1] Rose's claim against defendant David Solis was tried to a jury. The jury found for the defendant. Rose did not appeal the judgment favoring Solis, and therefore Solis is not a party to this appeal.

the Jefferson County Detention Center to serve a six-month sentence for DUI, Rose told prison medical staff at the intake interview that he was scheduled for a total hip replacement. Noting in his record that Rose needed to see an orthopedic surgeon and filling out a referral form dated the next day, the physician assistant also ordered a double mattress for Rose, assigned him to a lower bunk in the segregated housing unit, and prescribed Tylenol, Codeine, and 800 milligrams of Motrin three times per day.

Defendant Karen Baker, the prison's Health Services Administrator, contacted Rose's orthopedic specialists on August 6, 1996 at Lakewood Orthopedic Clinic and asked for more information regarding Rose's injury and need for further surgery. On August 7, Rose reported that he fell at the jail and reinjured his hip and knee. Defendant Dr. David Grayson, the prison's Medical Services Supervisor, immediately ordered x-rays following the fall, and the physician assistant ordered that Rose continue to receive the 800 milligrams of Motrin three times per day. Dr. Grayson examined the x-rays on August 12 and found no new fracture.

On either August 7 or 8 (the record is illegible on this point), someone from the prison called the Lakewood Orthopedic Clinic and set up an appointment for Rose. Dr. Friermood, a doctor there, saw Rose the following day and scheduled a follow-up appointment for August 14. Rose met with Dr. Friermood on August

14, and Dr. Friermood concluded that the hip fracture had collapsed, that some of the hardware from the previous repair had penetrated into the hip joint, and that they should attempt to schedule surgery. Rose was given an egg-crate mattress and a raised toilet seat, and he continued to receive Motrin three times per day through the end of the month.

On September 16, Rose was seen by Dr. Brugman, the surgeon who had performed the original procedure on his leg, and Dr. Brugman made observations similar to those of Dr. Friermood about the nature of the physical injuries. Characterizing Rose as an unreliable patient who would probably be better off with rehabilitation than with further surgery, however, Dr. Brugman determined to present Rose's situation at the "Trauma Meeting" for discussion. Rose complained of more pain the following week, and on September 25 he was transported to a hospital where Dr. Brugman performed a new round of surgery to adjust one of the screws and to remove the other screw. Rose was given Vicodin for pain and kept in the infirmary for forty-eight hours.

On September 29, the Vicodin was discontinued, and the 800 milligrams of Motrin was ordered resumed for the following three weeks. Dr. Brugman was contacted the next day, and he evaluated Rose on October 3. Rose subsequently complained of pain and swelling in his right knee, and on October 5, Dr. Grayson ordered that Rose be put on "Doctor's call" in the next three weeks for possible

referral to Dr. Brugman. On October 13, well before those three weeks had elapsed, an appointment was scheduled with Dr. Brugman for October 29.

On October 28, Dr. Brugman's office called to change plaintiff's October 29 appointment to November 4 because of the doctor's unavailability. At the November 4th appointment, Dr. Brugman determined that a total hip replacement was needed. Plaintiff was released from jail the following day and had surgery on January 6, 1997.

II

Eighth Amendment violations occur when police officers are deliberately indifferent to the serious medical needs of prisoners in their custody. Estelle v. Gamble, 429 U.S. 97, 104 (1976). While cognizable, "Eighth Amendment claims alleging inadequate or delayed medical care [] involve both an objective and a subjective component, such that we must determine both whether the deprivation is sufficiently serious and whether the [prison] official acted with a sufficiently culpable state of mind." Oxendine v. Kaplan, 241 F.3d 1272, 1276 (10th Cir. 2001) (quotations omitted).

To establish the objective requirement that the injury is "sufficiently serious," Rose must demonstrate that his medical need "is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."

Sealock, 218 F.3d at 1209.  The objective requirement also requires Rose to show that he was substantially harmed by the delay.  Oxendine, 241 F.3d at 1276.  Pain, as alleged here by Rose, may constitute substantial harm.  See Sealock, 218 F.3d at 1210 n.5.

Whether Rose's allegations of delay constitute a sufficiently serious deprivation is questionable, but even assuming that they do, Rose must demonstrate that defendants subjectively "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety."  Id. at 1209.  With respect to this requirement, an official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Farmer v. Brennan, 511 U.S. 825, 837 (1994).  Because Rose has not met this requirement, we affirm the district court's grant of summary judgment to the defendants.

Rose alleges two discrete forms of deliberate indifference.  First, he contends that the defendants were deliberately indifferent to his need for prompt medical care.  On the day after he arrived at the detention facility, however, Rose was referred to orthopedic surgeons for further evaluation.  Baker contacted the surgeons shortly thereafter to get further information regarding Rose's injuries and the possible need for further surgery, leaving a message on the clinic voice mail system.  Before the surgeons had responded to defendant Baker's inquiry,

-6-

Rose fell and reinjured his hip, and Dr. Grayson immediately ordered x-rays to determine the severity of the injury.

There is no evidence to suggest that either Baker or Grayson had any personal role in delaying Rose's treatment. As described in the facts, it was Rose's private doctors, not defendants, who charted the course of his care and scheduled his appointments. With respect to defendant Beckham, the Jefferson County sheriff, there is nothing in the record to indicate that Beckham failed to respond to Rose's medical needs or was "deliberately indifferent" in any way. Because Rose fails to demonstrate that "an affirmative link exists between the constitutional deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise," Green v. Branson, 108 F.3d 1296, 1302 (10th Cir. 1997), we conclude that his allegations concerning the delay in medical care do not establish an Eighth Amendment violation.

Rose also contends that the defendants were deliberately indifferent to his pain during the time interval preceding surgery. We note that Rose received some type of pain medication on eighty-seven of the ninety-nine days he was incarcerated. In addition, at the time Rose lodged his complaint of November 1, 1996, he was receiving 800 milligrams of Motrin three times per day.

Rose's difference of opinion with defendants regarding the ideal type or amount of pain medication simply is insufficient to establish their deliberate

indifference to his medical needs.     See Clemmons v. Bohannon   , 956 F.2d 1523, 1529 (10th Cir. 1992).  In each case, the defendants took relatively prompt action in response to Rose's complaints, and the delays seem ultimately attributable to scheduling difficulties with the examining doctors, who are not parties to this case.  Referral of  medically-based grievances to medical personnel demonstrates action, not indifference, on the part of a corrections officer.

Finally, Rose argues that the district court wrongly decided questions of material fact in favor of defendants, contrary to correct procedure on a motion for summary judgment.  None of the allegedly improperly-resolved facts, however, raises a genuine issue as to whether defendants were deliberately indifferent to Rose's serious medical needs.  Accordingly, the judgment of the district court is AFFIRMED.  Defendants' request for fees and costs is DENIED.

Entered for the Court

Carlos F. Lucero
Circuit Judge