FILED
United States Court of Appeals
Tenth Circuit

June 11, 2010

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

---

LARRY LEE LEMAY,

   Plaintiff-Appellee,

v.

BILL WINCHESTER, Sheriff,
Garfield County; KIM JOHNSON,
Nurse, Garfield County Detention
Facility,

   Defendants-Appellants,

and

MISTY TAYLOR; GARFIELD
COUNTY DETENTION FACILITY,

   Defendants.

No. 09-6144
(D.C. No. 5:07-CV-00401-HE)
(W.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **McKAY**, Circuit Judge, **BRORBY**, Senior Circuit Judge, and **EBEL**,
Circuit Judge.

---

[*]  After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is
therefore ordered submitted without oral argument. This order and judgment is
not binding precedent, except under the doctrines of law of the case, res judicata,
and collateral estoppel. It may be cited, however, for its persuasive value
consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Larry Lee Lemay, an Oklahoma prisoner proceeding pro se, filed a 42 U.S.C. § 1983 action alleging that defendants Johnson and Winchester were deliberately indifferent to his serious medical needs to treat his diabetes, in violation of the Eighth and Fourteenth Amendments to the United States Constitution. The district court adopted the recommendations of a magistrate judge, which included denying summary judgment based on qualified immunity to Sheriff Winchester and Ms. Johnson, the jail nurse. The sheriff and the nurse bring this interlocutory appeal to challenge the denial of qualified immunity.[1] This court lacks jurisdiction over the issues presented; accordingly, the appeal is DISMISSED.

*Background*

The magistrate judge described in detail the facts of the case. Therefore, we provide only a brief description of the facts, viewing the evidence in the light most favorable to Mr. Lemay as the nonmoving party. Mr. Lemay, an insulin-dependent diabetic, was incarcerated at the Garfield County Detention Facility (GCDF) on several occasions between October 2005 and June 2007.[2]

---

[1]    Although Mr. Lemay brought additional claims against these and other defendants, we are concerned only with the order denying qualified immunity.

[2]    Some of the time Mr. Lemay was a pretrial detainee. At other times, he had been convicted of crimes. "Under the Fourteenth Amendment due process clause, pretrial detainees are entitled to the degree of protection against denial of medical attention which applies to convicted inmates under the Eighth Amendment." *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir.) (quotation and

(continued...)

-2-

When he was first placed there, he completed a health questionnaire, indicating that he had diabetes and was on a doctor-prescribed diabetic diet. On January 5, 2006, he became ill and ultimately was hospitalized for seven days due to diabetic ketoacidosis (DKA), a serious condition caused by high blood sugar which can lead to coma and death. The hospital discharge instructions included a diabetic diet.

Mr. Lemay alleged that throughout his incarceration at the GCDF, his blood-sugar level was not checked often enough, the level was frequently too high, and his insulin pump was not refilled when needed. It is undisputed that he was never served a diabetic diet at the GCDF. Although ingestion of candy and sweets could counteract the positive effects of insulin, Mr. Lemay purchased numerous candy bars and other sweets from the jail commissary. He claimed, however, that he did not eat all of them. He made no commissary purchases of candy or sweets during 2007.

In 2007, Mr. Lemay was booked into the GCDF as an inmate in the custody of the Oklahoma Department of Corrections (ODOC). An ODOC form indicated he was to be on a physician-ordered diabetic diet. Mr. Lemay stated that he observed the ODOC medical personnel place his medication and his medical and

[2](...continued)
alteration omitted), *cert. denied*, 130 S. Ct. 259 (2009).

dietary instructions into a paper bag and hand it to the GCDF deputy who transported him to the GCDF.

Mr. Lemay filed suit, claiming that his constitutional rights were violated by the lack of a diabetic diet and inadequate or delayed medical care. In response, Ms. Johnson asserted that she did not have the authority to order a diabetic diet, but followed orders given by the jail physician or physician's assistant, neither of whom ordered such a diet for Mr. Lemay. Therefore, she argued, Mr. Lemay failed to show that she was personally involved in the alleged deliberate indifference to his serious medical needs. Sheriff Winchester also argued that Mr. Lemay failed to come forward with evidence that he was personally involved. In addition, he contended that even if some jail policies were deficient, they did not cause harm to Mr. Lemay and that Mr. Lemay's allegations of delayed medical care did not show deliberate indifference.

The district court ruled that some of the claims against Ms. Johnson were time-barred, and limited the claims against her to allegations that she failed to provide plaintiff with a diabetic diet during his three periods of incarceration in 2007. The district court then adopted the report and recommendation of the magistrate judge and concluded that Mr. Lemay had produced sufficient evidence to create a factual dispute as to whether Ms. Johnson was deliberately indifferent to his serious medical needs. Accordingly, the court denied her motion for summary judgment based on qualified immunity. The court also denied Sheriff

Winchester's summary judgment motion based on qualified immunity, holding that the evidence was disputed "as to the existence of customs or policies leading to deficient medical care at GCDF," Aplt. App. Vol. II at 591, and there was evidence to link Mr. Lemay's allegedly inadequate medical care with policies and customs over which Sheriff Johnson had control.

*Legal Standards*

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, __ U.S. __, 129 S. Ct. 808, 815 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). When a defendant asserts qualified immunity at summary judgment, the burden shifts to the plaintiff to show: (1) the defendant violated a constitutional right and (2) the constitutional right was clearly established. *Bowling v. Rector*, 584 F.3d 956, 964 (10th Cir. 2009).

An order denying qualified immunity before trial is appealable "only to the extent that the denial . . . turns on an issue of law." *Price-Cornelison v. Brooks*, 524 F.3d 1103, 1108 (10th Cir. 2008). Review on interlocutory appeal is not available for "question[s] of 'evidence sufficiency.'" *Johnson v. Jones*, 515 U.S. 304, 313 (1995).

"This court reviews the denial of qualified immunity on summary judgment *de novo*." *Verdecia v. Adams*, 327 F.3d 1171, 1174 (10th Cir. 2003) (quotation omitted). Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "The evidence is viewed, and reasonable inferences are drawn from the evidence, in the light most favorable to the nonmoving party." *Verdecia*, 327 F.3d at 1174.

Mr. Lemay alleged that Ms. Johnson and Sheriff Winchester were deliberately indifferent to his serious medical needs, thus asserting a constitutional violation. *See Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). "'Deliberate indifference' involves both an objective and a subjective component." *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000). For the objective component, a "prisoner must first produce objective evidence that the deprivation at issue was in fact 'sufficiently serious.'" *Mata*, 427 F.3d at 751 (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). The subjective component requires "evidence of the prison official's culpable state of mind," which may be fulfilled by showing that the official "[knew] of and disregard[ed] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and she must also draw the

-6-

inference." *Id.* (quotation and brackets omitted). "Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation." *Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008) (quotation omitted).

Defendants concede that the constitutional right at issue here was clearly established. Ms. Johnson does not challenge the sufficiency of Mr. Lemay's evidence to satisfy the objective component. Both defendants assert that the undisputed evidence does not establish the subjective component. They also claim that Mr. Lemay failed to produce any evidence of their personal involvement in the alleged constitutional violations. Although they contend that they are entitled to qualified immunity even accepting Mr. Lemay's version of the facts, they have not relied solely on his version.

*Nurse Johnson*

As noted, the claims against Ms. Johnson are limited to her failure to provide Mr. Lemay a diabetic diet during March, May, and June of 2007, while he was housed at the GCDF. Ms. Johnson maintains that no evidence supports the subjective component because she was never informed that any physician had ordered a diabetic diet for Mr. Lemay, so she could not have exhibited deliberate indifference to his serious medical needs.

Ms. Johnson points to her own statements to argue that she was not informed that a diabetic diet was ordered by any doctor or the GCDF physician's

assistant.  In her response to a request for admissions, Ms. Johnson stated that after Mr. Lemay was booked into the GCDF, physician's assistant Harrison "believed it was not necessary to contact [Plaintiff's doctor] and that we could treat Plaintiff based on the information we had."  Aplt. App. Vol. II at 459-60.  In her affidavit, Ms. Johnson stated that GCDF procedure provided that she "follow the orders and instructions of Dr. Ogle and P.A. Harrison," who did not order a diabetic diet for Mr. Lemay.  *Id.* Vol. I at 268.  She further stated that she did not know of any orders from ODOC that Mr. Lemay be given a diabetic diet.  *Id.* Ms. Johnson also relies on her jail treatment notes, which indicate that Dr. Moery, the physician who treated Mr. Lemay at the hospital, directed that he have a regular jail diet.  *Id.* at 41.

The magistrate judge found that there was evidence to the contrary, such as (1) the hospital discharge instructions that included a diabetic diet, *id.* Vol. II at 322, 446; (2) Dr. Moery's deposition testimony that she did not recall telling Ms. Johnson that Mr. Lemay should have a regular "jail" menu and she did not know what constituted a "jail" menu, *id.* at 446, 448; (3) an ODOC direction that Mr. Lemay be on a physician-ordered diabetic diet during his 2007 incarcerations, *id.* at 489; (4) Mr. Lemay's statement that when he was returned to the GCDF in 2007, he observed ODOC medical personnel place his treatment documents, including a diabetic diet order, into a brown paper bag and deliver it to his GCDF

escort, R. Doc. 138, ¶ 4;[3] (5) an ODOC medical transfer summary for Mr. Lemay's transfer to the GCDF in March 2007 indicating that he was to be on a diabetic diet, *id.* Doc. 139 Attach. 4; (6) Mr. Lemay's statement that he told jail staff about his diet upon booking, Aplt. App. Vol. II at 547; (7) jail medical records indicating that Mr. Lemay's blood-sugar level was high on numerous occasions; and (8) Ms. Johnson's March 12, 2007, treatment note stating that Mr. Lemay was not to be given his diabetic snack, thus indicating that she was aware that he should have been on a diabetic diet.

In addition, Ms. Johnson contends that she did not have the authority to order a diabetic diet, so plaintiff failed to establish that she personally participated in denying him such a diet. She again relies on her own statements to this effect to refute the district court's characterization of her as a gatekeeper. *See Mata*, 427 F.3d at 751 ("A prison medical professional who serves solely as a gatekeeper for other medical personnel capable of treating the condition may be held liable under the deliberate indifference standard if she delays or refuses to fulfill that gatekeeper role." (quotations and alteration omitted)). The court found that the evidence indicated a diabetic diet was "not available to inmates without

---

[3]     Some of the documents on which the district court relied are not included in the appellants' appendix. We have obtained the necessary documents from the district court's electronic filing system. *See Burnett v. Sw. Bell Tel., L.P.*, 555 F.3d 906, 909 (10th Cir. 2009) (noting that appellate court may access district court pleadings via the district court's electronic filing system or otherwise, should it choose to do so).

Defendant Johnson's involvement and/or approval as facility nurse." Aplt. App. Vol. II at 549.

In sum, although Ms. Johnson has attempted to frame this appeal as a challenge to the district court's conclusions of law, what she is really challenging is the district court's determination that, when viewed in the light most favorable to Mr. Lemay, the evidence sustained his burden to show that Ms. Johnson was deliberately indifferent to his serious medical needs. Therefore, this court lacks jurisdiction over her interlocutory appeal. *See Price-Cornelison*, 524 F.3d at 1108.

*Sheriff Winchester*

Sheriff Winchester argues that he is entitled to qualified immunity because he was not personally involved in the alleged constitutional deprivation.[4] He points to the district court's determination that he was not personally involved in providing medical care or meals to Mr. Lemay. He disputes the court's determination that the requisite causal link was provided by jail policies and customs over which he had control and which resulted in the allegedly inadequate and delayed medical care provided to Mr. Lemay.

---

[4] The district court also denied Sheriff Winchester summary judgment on Mr. Lemay's claims that he was liable in his official capacity. That ruling is not before us. *See Starkey ex rel. A.B. v. Boulder County Social Servs.*, 569 F.3d 1244, 1263 n.4 (10th Cir. 2009) (stating that qualified immunity "is available only in suits against officials sued in their personal capacities, not in suits against governmental entities or officials sued in their official capacities").

Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation. Supervisory status alone does not create § 1983 liability. Rather, there must be an affirmative link between the constitutional deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise.

*Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (citations, quotations, and alteration omitted).

Sheriff Winchester does not dispute the district court's findings that he was the policymaker for the jail and that a final policymaker can be held personally liable. Instead, he asserts that Mr. Lemay offered insufficient evidence that the jail policies and procedures were deficient or that they caused him any harm. Mr. Lemay's allegations included claims that the absence of policies or procedures for emergency medical situations and for the preparation and service of special diets to inmates, as well as inadequate medical staffing and training, resulted in a constitutional deprivation.

The magistrate judge cited a 2003 report by the Department of Justice (DOJ) that set forth numerous deficiencies in the jail medical procedures that placed inmates at risk of harm. Sheriff Winchester argues that this report is irrelevant because its subject was a different, older jail building and the nurse on duty at the former jail was someone other than Ms. Johnson. He contends that correspondence about the jail's deficiencies from 2006 and 2007 "did not specify any deficiencies in the new facility's medical care policies or practices, and the

[November] 2007 correspondence actually commended the facility for its compliance with the DOJ's consultants' recommendations." Aplt. Opening Br. at 22. In addition, he maintains that reliance on the 2003 report could not provide the requisite causal link between the alleged constitutional deprivation and the jail policies and procedures.

As the district court pointed out, however, "[a] change in physical facilities does not necessarily indicate a change in policies and procedures." Aplt. App. Vol. II at 590. Moreover, there was evidence that not all of the report's recommended remedial measures were in effect during the relevant time period, such as having inmates fill out a medical intake questionnaire at the time of booking into the jail in 2007. *Compare* Aplt. App. Vol. II at 430 (referring to implementation of an intake medical screening process) *with* R. Doc. 138, ¶ 6 (Mr. Lemay's statement that he was not given a jail health questionnaire upon booking into the GCDF in 2007). And as the magistrate judge discussed, correspondence during the period between the 2003 initial report and the November 2007 letter demonstrated that correction of the problems was ongoing and did "not indicate whether the medical care deficiencies were ameliorated by the time of [Mr. Lemay's] incarceration." Aplt. App. Vol. II at 569.

Sheriff Winchester also contends that any inadequacies in policies pertaining to staffing or medical emergencies were irrelevant because the DKA episode was not an emergency. This too raises a factual challenge.

Sheriff Winchester further asserts that because Mr. Lemay did not show "substantial harm" caused by any delays in blood-sugar testing or the delivery of insulin, he did not state a claim of deliberate indifference. *See Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993) ("Delay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference which results in substantial harm." (quotation and brackets omitted)). The district court determined that Mr. Lemay had demonstrated substantial harm on at least one occasion, the January 5, 2006 DKA episode, thereby precluding summary judgment. Sheriff Winchester responds that Mr. Lemay's DKA was self-induced by consuming large amounts of candy and by deliberately failing to administer insulin. Again, the amount of candy Mr. Lemay consumed and the reason he did not receive sufficient insulin are disputed issues of fact.

Because Sheriff Winchester argues only that the disputed facts should be construed in his favor, his appeal suffers from the same jurisdictional infirmity as Ms. Johnson's. His appeal must be dismissed for lack of jurisdiction.

*Pending Motions*

Mr. Lemay has filed two motions that have been referred to this panel for disposition. First, he requests a summary disposition of this appeal on the ground that it is frivolous and without merit. Based on our disposition of the merits, this motion is DENIED as moot.

The second motion seeks dismissal of the appeal because appellants' brief was filed one day after the due date, it was mailed to him one day late, and he was served with only one copy of the brief instead of two. Contrary to Mr. Lemay's assertion, the brief was filed by the due date. The remaining contentions do not warrant dismissal. *See* 10th Cir. R. 27.2(A) (listing permissible dispositive motions). The motion is DENIED.

*Conclusion*

Mr. Lemay's pending motions are DENIED. This appeal is DISMISSED for lack of jurisdiction.

Entered for the Court

David M. Ebel
Circuit Judge