**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 27, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

PETER P. MAUCHLIN,

      Plaintiff–Appellant,

v.

BIER, SIS Correctional Supervisor;
A. OSAGIE, Physician Assistant;
DALGLEISH, EMT; BARRY,
Correctional Supervisor; HAM,
Correctional Supervisor; JOHN
DOE 1, Correctional Officer;
JOHN DOE 2, Medical Officer,

      Defendants–Appellees.

No. 10-1035
(D.C. No. 1:07-CV-02593-CMA-MEH)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **TACHA**, **LUCERO**, and **MURPHY**, Circuit Judges.

Peter P. Mauchlin, a federal inmate proceeding pro se, appeals from a grant

of summary judgment dismissing his Eighth Amendment claims. Exercising

jurisdiction under 28 U.S.C. § 1291, we affirm.

---

[*]    The case is unanimously ordered submitted without oral argument pursuant
to Fed. R. App. P. 34(a)(2) and 10th Cir. R. 34.1(G). This order and judgment is
not binding precedent, except under the doctrines of law of the case, res judicata,
and collateral estoppel. The court generally disfavors the citation of orders and
judgments; nevertheless, an order and judgment may be cited under the terms and
conditions of 10th Cir. R. 32.1.

# I

Following an x-ray and Mauchlin's admission that he swallowed a sewing needle encased in plastic, he was moved to a "dry cell" (a cell with no running water) to allow prison officials to recover the contraband. Mauchlin was wearing a t-shirt and boxer shorts when he was placed in the dry cell on the afternoon of December 28, 2006. He was given a mattress for the cell's cement bed and a blanket. Throughout his three-day confinement, he was provided with regular meals, hot water, coffee, and tea.

Lieutenant Marty Bier, one of the defendants, explained in his affidavit that "[t]he dry cell has two doors, an inner grill (a door with bars), and an outer solid door. Because the inmate is under constant supervision, typically only the inner door remains secured." Mark Masar, a heating, ventilating, and air conditioning supervisor, averred that "during the winter, indoor temperature is maintained at approximately 69-70°F throughout the institution." He also explained that the dry cell "is a 'negative pressure' cell, which means that it does not have a supply air input into the cell." Although the dry cell does not contain its own heater, heat "is pulled into the cell by the exhaust fan located adjacent to the cell, which runs at a high rate when turned on." According to Masar, "[t]he area outside the dry cell would have been approximately 70-71°F in late December 2006."

Mauchlin claims that the temperature inside the dry cell during his confinement averaged from 40 to 45°F. The prison's log book reflects that he

repeatedly complained that he was cold between the evening of December 30 and the morning of December 31. He was released early in the evening of December 31, after the contraband was recovered.

On January 12, 2007, Mauchlin reported that he was suffering a sinus infection. He was examined that same day by a physician's assistant, who diagnosed him with probable sinusitis and prescribed an antibiotic. The prescription was available the next day and was successful in relieving his symptoms.

Based on the cold conditions in the dry cell and the one-day delay in obtaining medication for his sinusitis, Mauchlin filed suit for damages under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 389 (1971). A magistrate judge issued a report recommending that summary judgment be granted to one defendant, but denied as to the remaining defendants. The district court concluded that all of the defendants were entitled to summary judgment on the basis of qualified immunity. Mauchlin timely appealed.

**II**

"We review a grant of summary judgment on the basis of qualified immunity de novo." Harman v. Pollock, 586 F.3d 1254, 1260 (10th Cir. 2009), petition for cert. filed, 78 U.S.L.W. 3590 (U.S. Mar. 29, 2010) (No. 09-1195). Summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue

as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).

Summary judgment orders deciding qualified immunity questions are reviewed "differently from other summary judgment decisions."  Martinez v. Beggs, 563 F.3d 1082, 1088 (10th Cir.) (quotation omitted), cert. denied, 130 S. Ct. 259 (2009).  "When a defendant asserts qualified immunity at summary judgment, the burden shifts to the plaintiff to show that:  (1) the defendant violated a constitutional right and (2) the constitutional right was clearly established."  Id.  "[T]he court has discretion to determine 'which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.'"  Id. (quoting Pearson v. Callahan, 129 S. Ct. 808, 818 (2009)).

## A

To prevail on an Eighth Amendment conditions-of-confinement claim, an inmate must satisfy a two-part test.  He must first establish the objective component, i.e., that "he [was] incarcerated under conditions posing a substantial risk of serious harm."  Farmer v. Brennan, 511 U.S. 825, 834 (1994) (citation omitted).  Second, an inmate must meet the subjective prong, which requires him to establish that the prison official had a "sufficiently culpable state of mind."  Farmer, 511 U.S. at 834 (quotation omitted).  In conditions-of-confinement cases,

"that state of mind is one of deliberate indifference to inmate health or safety." Id. (quotation omitted).

But we do not decide whether the defendants violated Mauchlin's Eighth Amendment rights, because we can "decide that there was no violation of clearly established law before turning to the more difficult question whether the relevant facts make out a constitutional violation at all." Pearson, 129 S. Ct. at 820. "Our inquiry into whether a constitutional right was clearly established must be undertaken in light of the specific context of the case, not as a broad general proposition." Bowling v. Rector, 584 F.3d 956, 964 (10th Cir. 2009) (quotations omitted). The question is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation. Summary judgment based on qualified immunity is appropriate if the law did not put the officer on notice that his conduct would be clearly unlawful." Id. (quotation and citation omitted). For a right to be clearly established, there must be "a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts [must hold] the law to be as the plaintiff maintains." Id. (quotation and alteration omitted).

Mauchlin relies on Wilson v. Seiter, 501 U.S. 294 (1991), and Mitchell v. Maynard, 80 F.3d 1433 (10th Cir. 1996). In Mitchell, the plaintiff was "stripped of his clothing, placed in a concrete cell, with no heat at a time when nighttime temperatures hovered in the mid-fifties, provided no mattress, blankets or bedding

of any kind, . . . not provided with adequate ventilation, [and] not provided with hot water." 80 F.3d at 1442. We held that these conditions, in combination, could establish a constitutional violation. Id. The Wilson Court held that

> [s]ome conditions of confinement may establish an Eighth Amendment violation in combination when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise—for example, a low cell temperature at night combined with a failure to issue blankets.

Wilson, 501 U.S. at 304 (quotation marks omitted).

But unlike the plaintiff in Mitchell or the hypothetical in Wilson, Mauchlin was provided a blanket, mattress, some clothing, hot water, tea, and coffee. These provisions mitigated the effects of low cell temperature to some extent. We agree with the district court that the conditions in the dry cell, when considered as a whole, were not so severe as to make it "clear to a reasonable officer that his conduct was unlawful in the situation." Bowling, 584 F.3d at 964 (quotation omitted). Accordingly, defendants were entitled to qualified immunity with respect to Mauchlin's conditions-of-confinement claim.

**B**

Mauchlin also argues that his Eighth Amendment rights were violated because of a one-day delay in receiving the antibiotic prescribed for his sinusitis. "A prison official's deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment." Sealock v. Colorado, 218 F.3d 1205, 1209

(10th Cir. 2000).  However, the undisputed evidence shows that "[s]inusitis is not a life-threatening condition, except in very rare circumstances.  [It] is most-often treated by allowing the infection to resolve on its own."  Accordingly, the district court correctly concluded that the brief delay in dispensing antibiotics did not violate Mauchlin's constitutional rights.

## III

We **AFFIRM** the judgment of the district court.  We **GRANT** Mauchlin's motions to supplement his opening and reply briefs.  We remind Mauchlin that the district court granted his motion to proceed in forma pauperis on appeal, and that his obligation to make partial payments continues until the entire filing fee is paid.

Entered for the Court,

Carlos F. Lucero
Circuit Judge