**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 28, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

EMBRY JAY LOFTIS,

    Plaintiff - Appellant,

v.

DR. MITSI FAUBION; HEATHER
KNIGHT, Medical Administrator;
BRITTANY CAMPBELL, LPN, Nurse at
MACC,

    Defendants - Appellees.

No. 19-7016
(D.C. No. 6:17-CV-00315-RAW-SPS)
(E.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **TYMKOVICH**, Chief Judge, **HARTZ** and **BACHARACH**, Circuit Judges.
_____

Embry Jay Loftis, an Oklahoma state prisoner proceeding pro se, appeals from

the district court's order granting summary judgment in favor of Mitsi Faubion, D.O.;

Heather Knight, Medical Administrator; and nurse Brittany Campbell on his claim

under 42 U.S.C. § 1983 for violation of his Eighth Amendment rights.  According to

Loftis, the defendants—employees of the Mack Alford Correctional Center

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel.  It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

(MACC)—acted with deliberate indifference to his serious medical needs when they delayed referring him to an outside specialist to treat a foot injury. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## BACKGROUND

Before his incarceration Loftis sustained a left-foot injury from a chainsaw accident and left-ankle injury from an accidental gunshot wound. Both injuries were healed by the time of his incarceration. Shortly after Loftis arrived at MACC in February 2014, he requested and was assigned to a bottom bunk because the prior injuries had limited his ability to use his left foot normally. Loftis did not complain about his foot again until late November 2015, when he asked to be seen by medical services to obtain approval to receive a pair of orthopedic shoes from an outside vendor. At an appointment in early December, Dr. Faubion began the process of determining whether there was a medical necessity for the special footwear, which required an x ray and permission from Knight.

A January 2016 x ray of Loftis's left foot showed degenerative arthritis and spurring on his heel, but no fracture, destructive bony lesion, or instability. A nurse told Loftis at a February 2017 appointment that even though the x ray was negative, if he was still interested in special shoes, he should have his family email a picture of the shoes and the warden and medical staff would decide whether they should be approved.

The special footwear was sent to Loftis in May 2016; but it was held by a property officer pending the warden's approval. Although Loftis had not yet

2

received the footwear, on June 16 he submitted a request for an appointment to discuss a referral to an orthopedic specialist for further evaluation. The next day, the special footwear was released to Loftis. Loftis did not attend the appointment set for June 23 to address whether he should have a specialist referral.

At a July 8, 2016 appointment, Loftis again complained of foot pain and told Dr. Faubion she should order weight-bearing x rays "to see the damage to the joint." *Id*., Vol. II at 18. He also renewed his request to see an outside specialist. On July 11 further x rays were taken of Loftis's left foot; they indicated some spurring and degenerative arthritis but were otherwise negative. Also on July 11, Loftis submitted a request to be referred to an outside specialist, this time for an MRI of his ankle. Knight denied Loftis's requests on July 28 and August 22.

In September 2016, Loftis made further requests for care but he failed to attend three scheduled appointments concerning his foot. On September 26, at the one appointment Loftis did attend, Dr. Faubion noted he was not wearing his special shoes. She refilled his prescription for ibuprofen and gave him stretching exercises for plantar fasciitis.

On October 25, 2016, Loftis was again seen by Dr. Faubion, who scheduled him for an examination by an orthopedic specialist at Lindsay Memorial Hospital (LMH), which took place on November 29. Loftis returned to LMH on January 24, 2017, for further evaluation. The orthopedic specialist, Dr. Richard Greisman, recommended that Loftis get "wide/high toe box" shoes, and return in six weeks. *Id*.

at 92.  Based on the recommendation, Dr. Faubion referred Loftis to receive orthopedic shoes.

Loftis was seen at LMH on March 7, 2017, and Dr. Greisman again recommended using the special shoes before trying surgery.  When Loftis complained about this course of treatment, Dr. Faubion explained: "I cannot override the orthopedic surgeon.  We have to follow his course of action."  *Id*. at 56.  At his follow-up visit with Dr. Greisman on May 2, Loftis "opt[ed] for surgical intervention," which he acknowledged carried risks of "continued discomfort, . . . persistent pain, incomplete relief, . . . [the] need for further surgery, [and] painful hardware."  *Id*. at 61-62.  On May 16, Dr. Greisman performed the surgery.  At his examination on July 11, Loftis said he was "doing well," and Dr. Greisman noted "[t]he incision of his left great toe is well healed . . . [and] [m]inimal pain to palpation."  *Id*. at 110.  In August 2017, Loftis filed suit.

The district court decided that Loftis "failed to fully and properly exhaust administrative remedies" and in any event, "summary judgment must be granted in favor of Defendants even if the court were to assume [Loftis] had exhausted the administrative remedies."  *Id*., Vol. 1 at 256.  The court determined that "[a]t no time was [Loftis] denied medical treatment for his foot problems," *id*. at 259, and his "difference of opinion [on how to best treat his foot condition] does not support a claim of cruel and unusual punishment," *id*. at 260.  We resolve the matter on the deliberate-indifference claim.  *See Fluker v. Cty. of Kankakee*, 741 F.3d 787, 793 (7th Cir. 2013) (affirming summary judgment without resolving exhaustion); *Ramos*

4

*v. Patnaude*, 640 F.3d 485, 488-89 (1st Cir. 2011) (Souter, J.) (same); *but see Snyder v. Harris*, 406 F. App'x 313, 316 (10th Cir. 2011) (unpublished).

## ANALYSIS

**Summary Judgment**

We review de novo the district court's grant of summary judgment, applying the same standard that the district court is to apply. *See Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[W]e look at the factual record and the reasonable inferences to be drawn from the record in the light most favorable to the non-moving party." *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006). Nonetheless, "[t]he plaintiff must go beyond the pleadings and designate specific facts so as to make a showing sufficient to establish the existence of an element essential to that party's case in order to survive summary judgment. . . . Unsubstantiated allegations carry no probative weight in summary judgment proceedings." *Id.* (internal quotation marks omitted).

**Eighth Amendment**

"A prison official's deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment." *Sealock*, 218 F.3d at 1209. "Deliberate indifference involves both an objective and a subjective component. The objective component is met if the deprivation is sufficiently serious." *Id.* (internal quotation marks omitted). And "[t]he subjective component is met if a prison official knows of

5

and disregards an excessive risk to inmate health or safety." *Id*. (internal quotation marks omitted). Negligent diagnosis or treatment is not enough to support a constitutional violation. *See Self*, 439 F.3d at 1230. Indeed, our "cases show that the subjective component is not satisfied, absent an extraordinary degree of neglect, where a doctor merely exercises his considered medical judgment." *Id*. at 1232.

Loftis's claim is that the defendants violated his constitutional rights by delaying his referral to an orthopedic specialist and the surgery he ultimately obtained. We need not address the objective component of his claim, because his claim clearly fails on the subjective component. The evidence does not support even a finding of negligence by Dr. Faubion or the other defendants. "Matters that traditionally fall within the scope of medical judgment are such decisions as whether to consult a specialist or undertake additional medical testing," *id*., which are the types of decisions Dr. Faubion made in this case. Her decision to pursue conservative treatment in the first instance was also the judgment of Dr. Greisman. Recall Dr. Greisman's decision not to perform surgery because of the risks attendant to such a procedure, but to wait several months to see whether conservative treatment would be effective. Plaintiff may have disagreed with the approach of the defendants, but such differences do not establish deliberate indifference. *See Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993) (a difference of opinion between a prisoner and the medical judgment of prison doctor does not support a claim of cruel and unusual punishment under the Eighth Amendment).

## CONCLUSION

The judgment of the district court is affirmed.

Entered for the Court

Harris L Hartz
Circuit Judge